Luther W. SHUMATE et al., Petitioners,
and
Union Carbide Corporation, Intervenor,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 15410.

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 1, 1971.

Decided Dec. 2, 1971.

Albert V. Bryan, Circuit Judge, filed a dissenting opinion.

David D. Johnson, Charleston, W. Va. (Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., on the brief) for petitioners.

John W. Whittlesey, Atty., New York, Union Carbide Corporation, on the brief, for intervenor.

Elliott Moore, Atty., N.L.R.B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Frank Vogl, Atty., N.L.R.B., on the brief) for respondent.

Before BRYAN, CRAVEN, and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

This petition for review of a decision of the National Labor Relations Board questions the application of the Labor Act's six-months period of limitations [1] to charges of coercion based on a union's attempts to collect fines imposed for crossing a picket line. The Board held the charges were barred because they were filed more than six months after the imposition of the fines. [2] We believe, however, that subsequent attempts to collect the fines within the limitations period provide a basis for charges of unlawful coercion that are not barred by the lapse of time. We also conclude that the union waived the statute of limitations and that the Board committed a procedural error by invoking this affirmative defense. Accordingly, we set aside the order dismissing the complaint and remand the case for decision on its merits.

## I

Luther W. Shumate and the other petitioners were employers of Union Carbide Corporation at its South Charleston, West Virginia, plant on July 24, 1967. On that date, a collective bargaining agreement between Local Lodge 598, International Association of Machinists and Aerospace Workers (AFL–CIO), and Union Carbide terminated, and the union authorized an economic strike that lasted until October 9, 1967. Although the petitioning employees were members of the union on July 24 and initially participated in the strike, each of them resigned from the union and returned to work before the strike ended. The union responded by charging the employees with improper conduct for crossing the picket line. When the employees were notified of the union hearings on the charges, they ignored the proceedings because, having resigned, they believed they were not subject to the union's disciplinary control. The union, maintaining that its constitution did not permit resignation, tried the employees in their absence, fined and expelled them. The employees received notice of this action in November 1967. In April 1968, the union wrote the employees that it would bring suit to collect the fines unless they were immediately paid. Receiving no response, on May 21, 1968 the union instituted a suit in a West Virginia court which is still pending.

Shumate filed the initial unfair labor practices charge on June 21, 1968, and the others filed on July 17, 1968. The employees concede that it is settled by NLRB v. Allis-Chalmers Manufacturing Co., 388 U.S. 175, 87 S.Ct. 2001, 18 L. Ed.2d 1123 (1967), that a union can lawfully fine members for crossing a picket line. They contend, however, that having resigned from the union before crossing the line, the fines, the dunning letters, and the suit for collection constituted unfair labor practices prohibited by § 8(b) (1) (A) of the Act. [3] The union contends that the resignations of the employees during the course of the

1. Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) (1970), provides in part:
   "[N]o complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made. * * *"

2. International Ass'n of Machinists, 180 N.L.R.B. No. 135, 73 L.R.R.M. 1143, aff'd on reconsideration, 186 N.L.R.B. No. 138, 75 L.R.R.M. 1456 (1970).

3. Section 8(b) (1) (A) of the National Labor Relations Act, 29 U.S.C. § 158(b) (1) (A), makes it an unfair labor practice for a union

"to restrain or coerce * * * employees in the exercise of the rights guaranteed in section [7] * * *: Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein. * * *"
Section 7, 29 U.S.C. § 157, guarantees employees
"the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and * * * the right to refrain from any or all of such activities. * * *"

strike were ineffective and that the fines are therefore lawful. The parties, considering the primary issue to be whether the employees were subject to the jurisdiction of the union when they crossed the picket line, submitted the case to the Board on stipulated facts.

The Board, however, did not decide the case on its merits. It held the charges were barred by § 10(b) because in its opinion the operative facts occurred more than six months before the charges were filed. It pointed out that only the threat to sue and the filing of the suit took place within the limitations period. It considered these acts lawful in and of themselves and that to hold them unlawful it would be necessary to determine that the fines were illegally imposed. "In making such a finding," the Board concluded, it "would be doing precisely what the Supreme Court condemned in [Local Lodge No. 1424, etc. (Bryan Manufacturing Co.) v. NLRB, 362 U.S. 411, 422, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960)], namely, finding a 'violation which is inescapably grounded on events predating the limitations period * *.'" 180 N.L.R.B. No. 135, at ——, 73 L.R.R.M. at 1144.

*Bryan*,[4] cited by the Board, states the rules for determining when evidence of time-barred events is admissible to prove charges of unfair labor practices.

"It is doubtless true that § 10(b) does not prevent all use of evidence relating to events transpiring more than six months before the filing and service of an unfair labor practice charge. However, in applying rules of evidence to the admissibility of past events, due regard for the purposes of § 10(b) requires that two different kinds of situations be distinguished. The first is one where occurrences within the six-month limitations period in and of themselves may constitute, as a substantive matter, unfair labor practices. There, earlier events may be utilized to shed light on the true character of matters occurring within the limitations period; and for that purpose § 10(b) ordinarily does not bar such evidentiary use of anterior events. The second situation is that where conduct occurring within the limitations period can be charged to be an unfair labor practice only through reliance on an earlier unfair labor practice. There the use of the earlier unfair labor practice is not merely 'evidentiary,' since it does not simply lay bare a putative current unfair labor practice. Rather, it serves to cloak with illegality that which was otherwise lawful. And where a complaint based upon that earlier event is time-barred, to permit the event itself to be so used in effect results in reviving a legally defunct unfair labor practice." 362 U.S. at 416, 80 S.Ct. at 826.

This case falls within the first situation described in *Bryan*. The threats to sue and the suit were current efforts to punish the employees for crossing the picket line. Evidence of the earlier events is admissible to illuminate the character of the union's more recent tactics.

The parties stipulated at the Board proceedings that the employees, if called to testify, would state that they did not appear at the union's hearing which resulted in the imposition of the fines because they believed the union no longer had any jurisdiction or authority over them. Without attempting to reach the merits of the case, it is sufficient for us to note that recent Board decisions furnish a rational basis for the employees'

---

4. *Bryan* dealt with a collective bargaining agreement which required union membership as a condition of employment. Since the union represented only a minority of the employees when the agreement was executed, the Board deemed the inclusion of the union security clause an unfair labor practice. After the agreement had been in effect ten months, its continued enforcement was attacked as an unfair labor practice. Noting that the agreement was lawful on its face, the Supreme Court ruled that it could be considered unlawful only because it had been illegally executed, an event that occurred more than six months before the charges were filed. The Court held, therefore, that the charges were barred by § 10(b).

belief. The Board has ruled that the members of this particular union were free to resign at will because the union's constitution lacked any provision for members to voluntarily withdraw. Aeronautical Industrial Lodge 751, 173 N.L.R.B. 450, 452 (1968). And the Board has held that employees who resigned from their union before crossing a picket line may not be fined. Booster Lodge 405, IAM (Boeing Co.), 185 N.L.R.B. No. 23, 75 L.R.R.M. 1004 (1970), *enforced in pertinent part,* Nos. 24,687, 24,744, D.C. Cir., Feb. 3, 1972. Viewed in this light, it was the threat to sue and the suit, not merely the imposition of the fines, that put pressure on the employees.

■ The assessment of the fines is important only as evidence in the union's civil suit to obtain judgments against the employees. The civil complaint alleges all of the elements required for judgment —the strike and its duration; the existence of the picket line; the membership of the employees, and their improper conduct in crossing the line; and the union trial and punishment. The suit is not benign; it is a fresh assertion that the employees were members of the union, and it omits any reference to their resignations. Its effectiveness does not depend on what the union proved at the union trial. It depends on the proof the union can muster at the state trial. Moreover, as the Board noted in *Boeing,* even though the fines may not be collectible through court action, the employees must retain counsel whose services they would otherwise not require. 185 N.L.R.B. No. 23, at ——, 75 L.R.R.M. at 1005. This burden, too, may be deemed coercive.

In Cone Mills Corp v. NLRB, 413 F. 2d 445, 448 (4th Cir. 1969), we held that § 10(b) as interpreted by *Bryan* did not bar charges involving "a repetitive succession of events occurring within a period of six months prior to the filing of the charge." In the same vein, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL–CIO v. NLRB,

124 U.S.App.D.C. 215, 363 F.2d 702, 706, cert. denied, 385 U.S. 973, 87 S.Ct. 510, 17 L.Ed.2d 436 (1966), held that *Bryan* should not be read to bar prosecution of an unfair labor practice charge "[w]hen within the six-month period there has been active conduct, as contrasted with mere passive inaction following an old offense. * * *" In both cases evidence concerning conduct that occurred beyond the six-months period was admitted to amplify more recent events. The same kind of situation is disclosed by this record. The union first sought to punish the employees more than six months before the charges were filed, but it actively pursued its goal through repetitive attempts to extract money from them within the limitations period.

The decision we reach is also consistent with the Board's holding in Local 248, UAW (Allis-Chalmers), 149 N.L.R.B. 67 (1964), enforced sub nom. NLRB v. Allis-Chalmers Manufacturing Co., 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967), that § 10(b) did not bar relief. In *Allis-Chalmers,* involving a sequence of events very similar to the present case, union members were fined by the union for having breached picket lines during a strike. The employees filed unfair labor practice charges against the union more than six months after the imposition of the fines, but within six months of the union's attempt to collect them. The union pleaded that the charges were barred by § 10(b) because the fines had been imposed approximately a year and a half before the filing of charges. The trial examiner, whose ruling was affirmed by the Board, cited *Bryan* in peremptorily dismissing this defense, saying, "[W]here, as here, implementing action is taken within the 6-month period, Section 10(c) [*sic*] does not bar the proceeding * * *." 149 N.L.R.B. at 76 n. 12.

We conclude, therefore, that the charges of unfair labor practices are not barred by § 10(b).

## II

■■ We believe that the Board also committed procedural error by relying

on § 10(b). The union did not plead the statute of limitations but submitted its case on the merits. The Board's dismissal of the charges on its own initiative is inconsistent with its earlier ruling that § 10(b) "is a statute of limitations, and is not jurisdictional. It is an affirmative defense, and if not timely raised, is waived * * *." Chicago Roll Forming Corp., 167 N.L.R.B. 961, 971 (1967), enforced sub nom. NLRB v. Chicago Roll Forming Corp., 418 F.2d 346 (7th Cir. 1969).

We deny enforcement of the Board's order and remand the case for decision on its merits.

ALBERT V. BRYAN, Circuit Judge (dissenting):

Time-barred, the Board has said and I agree, was the complaint of the petitioning employees by reason of the six-month limitation of § 10(b) in the NLRA. A chronology of the cardinal circumstances follows:

| | |
|---|---|
| July 24, 1967 | Strike called. |
| August–September 1967 | Employees resigned from union. |
| September–October 1967 | Employees returned to work and crossed picket line. |
| October 9, 1967 | Strike terminated. |
| October 1967 | Charges filed against employees for crossing picket line. |
| October 1967 | Employees notified of hearings on charges. |
| October–November 1967 | Employees deny union jurisdiction by reason of their resignations. |
| October–November 1967 | Hearings held on charges, employees not appearing. |
| November 1967 | Employees notified that they had been expelled and fined. No appeal taken. |
| April 17, 1968 | Notice given employees of fines due, and of civil suit if not paid by April 24, 1968. |
| May 21, 1968 | Suit filed in State court—still pending. |
| June–July 1968 | Unfair labor practice charges filed by employees against union because of threat of suit. |
| October 10, 1968 | Consolidated complaint issued on the charges filed with Board. |
| January 22, 1970 | Board dismissed complaint as time-barred. |

There can be no doubt that the notice of expulsion and amercement was com-municated to the employees no later than November 1967; nor is there doubt that these notices inherently were demands for payment of the fines.

I. The position of the employees, first and fundamentally, is that their resignations terminated their obligation not to cross the picket line; that consequently they could not be held in violation of the union's rule; ergo, the expulsions and impositions were meaningless. They say the only definitive acts of the union were the threat of suit and suit, both of which occurred well within six months before the unfair labor practice charges were filed. Alternatively, they maintain that at least these acts were so related to the original offense as to constitute a continuance of it. They rely on what is designated as the first "situation" in the *Bryan* case, Local Lodge No. 1424 v. NLRB, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed. 2d 832 (1960). It is defined by the Court as follows:

"The first is one [situation] where occurrences within the six-month limitations period in and of themselves may constitute, as a substantive matter, unfair labor practices. There, earlier events may be utilized to shed light on the true character of matters occurring within the limitations period; and for that purpose § 10(b) ordinarily does not bar such evidentiary use of anterior events." 362 U. S. at 416, 80 S.Ct. at 826.

That situation is embraced here by the majority.

As is manifest from the excerpt just quoted, this view flagrantly disregards the law of *Bryan*. To come within the first situation the "occurrences within the six-month limitations period in and of themselves may constitute, as a substantive matter, unfair labor practices". Here they positively do not. The Board finds as a fact that "it is not urged that the threat to bring suit and the actual institution of the court proceedings *independently* violated the Act". 180 NLRB, ——, —— n. 8 (1970). (Ac-

cent added.) General Counsel, in advocacy of employees and opposing the conclusion of the Board, conceded before the Board that "there is nothing unlawful in these acts in and of themselves". Id. ——. .

For me, our case is completely and exclusively within the second situation stated by the Court:

" * * * where conduct occurring within the limitations period can be charged to be an unfair labor practice only through reliance on an earlier unfair labor practice. * * * And where a complaint based upon that earlier event is time-barred, to permit the event itself to be so used in effect results in reviving a legally defunct unfair labor practice." 362 U. S. at 416–17, 80 S.Ct. at 827.

Whether the union's November 1967 action was effectual or ineffectual, lawful or unlawful, it is still *the* event to which the contention of the employees must necessarily, and does actually refer. It is the antecedent of the threat and the civil suit forming the employees' charges. Without advertence to the November 1967 event the complaint would have no body, for alone it was innocuous, as we have seen.

The insecurity of the employees' stance is disclosed by the query: had this case proceeded to its merits, would not the determinative premise have been the legality of the expulsion and levy? The gravamen of the complaint is the invalidity of the union's November condemnation of the employees. That is the grievance pressed upon the Board. Employees argue from that solitary base. Reversion to it was irreplaceable because there was nothing in the subsequent contacts constituting an unlawful labor practice.

In their briefs, the complaining parties with persistence attack the union's expelling and punitive resolves. Incidentally, in this way they quite rightfully recognize the union's 1967 acts as the original sin. Actually, at this stage of the case the correctness or incorrectness of the union's initial decisions is immaterial. Their worth lies in the fact that, right or wrong, they mark the start of the employees' plaint. Without them, as we have seen, there is not even the pretense of an unfair labor practice.

The November determinations were not simply background of a subsequent unfair practice. Utilization of them in this wise is decried by the Court in *Bryan*, supra, 362 U.S. at 417, 80 S.Ct. at 827, in this fashion:

" * * * the use of the earlier unfair labor practice is not merely 'evidentiary,' since it does not simply lay bare a putative current unfair labor practice. Rather, *it serves to cloak with illegality that which was otherwise lawful.*" (Accent added.)

Finally, in not measuring the six months from November 1967 the employees give the force of verity to their allegations of no union jurisdiction over them. Only in this manner can they ignore the incidence of the November 1967 affair. They thus would brush it aside as of no efficacy, asserting that what matters is only what occurred in 1968. Jurisdiction or no over the employees by the union was a question for the Board. Indeed, the employees themselves submitted that very issue to the Board, there, again, placing the birth of the complaint at November 1967.

Overall, *Bryan*, supra, 362 U.S. at 415–17, 80 S.Ct. at 822, precisely designs decision here. There the collective bargaining agreement executed in August 1954 included a "union security" condition. As the union did not on that date represent a majority of the employees, the clause was in violation of the NLRA and so an unfair labor practice. Ten or more months thereafter charges were filed with the Board demonstrating the illegality of the agreement. The Court declared that the continued enforcement of the agreement within the 6-month limitation did not vitiate the earlier bar of § 10(b). For the same reason, presently, the Board was free of error in declaring the complaint too late, notwithstanding implementation of the November incident came within the mandatory six months.

II. Likewise to me, the limitation of § 10(b) was quite available to the Board as ground for decision. The proviso precluding issuance of a complaint for an unfair labor practice committed more than six months prior to the filing of the charges is not jurisdictional, contend the employees, but only a procedural requisite. Hence, they continue, it was waivable, and was waived here, by the union's failure to interpose it. For this thesis numerous decisions are summoned.[1]

Employees' position is hardly a foil to the Board's resort to 10(b). To begin with, the Court stated in *Bryan*, supra, 362 U.S. at 429, 80 S.Ct. at 833, "As expositor of the national interest, Congress, in the judgment that a six-month limitations period did 'not seem unreasonable' * * * *barred the Board* from *dealing* with past conduct after that period has run, even at the expense of the vindication of statutory rights". (Accent added.) Mr. Justice Frankfurter in dissent, while opposing the time-bar decision, said:

> "Congress no doubt wanted to put stale claims to rest, and it did so by a relatively short statute of limitations for permitting claims to be brought to litigation. If six months are allowed to pass by without a charge against an unfair labor practice being filed, Congress said that is an end of the matter, and a *charge cannot be filed thereafter.*" 362 U.S. at 431, 80 S.Ct. at 834. (Accent added.)

Accepting, arguendo, the employees' reading of the statute and perusing their authorities, it cannot be concluded that the Board, too, is bound to these premises. Waiver, as advanced by employees, is a proposition enforcible only between litigants; the cited precedents go not a little further. Whether jurisdictional or procedural, § 10(b) must foreclose waiver as a plea against the Board. No case to the contrary has been brought forward.

If the employees' footing were sound, the result would be to imbue labor and management with the power to enlarge, just as far as they wished, the period stipulated by law for filing complaints. By agreement they could confederate to refrain from filing charges and from interjecting waiver. This might be mutually desirable if they wished to defer *indefinitely* an advisory opinion or direction from the Board. Dispatch of the resolution of labor disputes, to remove blockage of the flow of commerce, was a prompting cause for Congress' acceleration of Board decisions. Allowing the parties to extend the time would thwart public interest in the quick settlement of management-labor problems.

I would enforce the Board's order of dismissal.

1. Belo Corp. v. NLRB, 411 F.2d 959, 966 (5 Cir. 1969); NLRB v. Silver Bakery, Inc., 351 F.2d 37, 39 (1 Cir. 1965); NLRB v. A. E. Nettleton Co., 241 F.2d 130, 133 (2 Cir. 1957); NLRB v. Clausen, 188 F.2d 439, 443 (3 Cir. 1951); cf. N.L.R.B. v. MacMillan Ring-

Free Oil Co., Inc., 394 F.2d 26 (9 Cir. 1968); and the case, cited by the majority, of Chicago Roll Forming Corp., 167 NLRB 961, 971 (1967), enforced sub non., NLRB v. Chicago Roll Forming Corp., 418 F.2d 346 (7 Cir. 1969).