UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION, STEAMSHIP CLERKS
LOCAL 1624, AFL-CIO,
Plaintiff-Appellant,

v.                                                              No. 95-2288

VIRGINIA INTERNATIONAL TERMINALS,
INC.,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Henry C. Morgan, Jr., District Judge.
(CA-95-274)

Argued: March 6, 1996

Decided: April 17, 1996

Before MURNAGHAN and NIEMEYER, Circuit Judges, and
YOUNG, Senior United States District Judge for the District of
Maryland, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Thomas Francis Hennessy, III, HARDEE & HEN-
NESSY, P.C., Chesapeake, Virginia, for Appellant. Thomas Michael
Lucas, VANDEVENTER, BLACK, MEREDITH & MARTIN, Nor-

folk, Virginia, for Appellee. **ON BRIEF:** SuAnne L. Hardee, HARDEE & HENNESSY, P.C., Chesapeake, Virginia, for Appellant. Mary C. Hamilton, VANDEVENTER, BLACK, MEREDITH & MARTIN, Norfolk, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Steamship Clerks Local 1624 of the International Longshoremen's Association filed the instant action against Virginia International Terminals (VIT) on March 22, 1995, alleging that the company had violated the collective bargaining agreement between them when it implemented a new policy concerning timekeepers' hours and wages. A "contract board" established by the agreement, composed of an equal number of Union and employer representatives, had ruled in February 1994 that the policy did not violate the agreement. Even though the contract board's decisions were to be regarded by the parties as final and binding, the Union had challenged the policy on two subsequent occasions; each time, the contract board had affirmed its February 1994 decision.

On May 22, 1995, the United States District Court for the Eastern District of Virginia held that the Union's claim was time-barred. The Court found that, because Local 1624 had argued that a representative of the parent union had not fairly represented the local union's interests at the February 1994 meeting of the contract board and that the integrity of the board's decision had therefore been undermined, the Union had advanced a hybrid Section 301-fair representation claim.[1]

_____

[1] An employee states a "hybrid claim" when he alleges both that his employer breached the applicable collective bargaining agreement in violation of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), and that his union violated its duty of fair representation. See, e.g., DelCostello v. International Bhd. of Teamsters , 462 U.S. 151, 163-65 (1983).

2

The court therefore held that, under <u>DelCostello v. International Bhd. of Teamsters</u>, 462 U.S. 151 (1983), the Union's complaint was governed by the six-month statute of limitations set out in Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). The District Court then determined that the alleged breach of the agreement had occurred in February 1994, when the contract board first approved the timekeepers policy, and that the Union's March 1995 complaint had therefore not been timely filed. We affirm.

I.

The Union has contended that the District Court should have applied the Commonwealth of Virginia's five-year statute of limitations for actions alleging a breach of a written contract, <u>see</u> Va. Code Ann. § 8.01-246(2) (Michie 1992), rather than the six-month limitations period prescribed by Section 10(b). We reject that argument, having concluded that the Union stated a hybrid claim governed by Section 10(b) and the Supreme Court's ruling in <u>DelCostello</u>.[2]

II.

In an effort to show that its complaint was filed within the six-month limitations period, the Union has contended that "[t]he applicable statute of limitations in this case accrues each and every time VIT violates the Collective Bargaining Agreement." Because VIT's new timekeepers policy was allegedly enforced as recently as April 22,

_____

[2] Contrary to the Union's suggestion, the fact that Local 1624 sued only VIT--rather than both VIT and the parent union--is irrelevant. <u>See, e.g.</u>, <u>DelCostello</u>, 462 U.S. at 165 (stating that, in a hybrid action, "[t]he employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both"); <u>Thomas v. LTV Corp.</u>, 39 F.3d 611, 621-22 (5th Cir. 1994) (holding that an employee had presented a hybrid claim--even though he had not sued his union--because in order to prevail in his Section 301 suit against his employer, he would have to show that his union failed fairly to represent him in the grievance proceedings); <u>McKee v. Transco Prod., Inc.</u>, 874 F.2d 83, 86-87 (2d Cir. 1989) (reaching the same conclusion). The Union's contention that the Supreme Court rejected that basic principle of federal labor law in its decision in <u>North Star Steel Co. v. Thomas</u>, ___ U.S. ___, 115 S. Ct. 1927 (1995), is wholly without merit.

1995 (one month after the Union filed the instant action), the Union believes that its action is not time-barred.

As support for its argument, the Union has cited the Sixth Circuit's decision in Sevako v. Anchor Motor Freight, Inc. , 792 F.2d 570 (6th Cir. 1986). In Sevako, employees had filed suit against both their employer and their union, complaining that an annual bidding process used by those entities to fill particular jobs violated the collective bargaining agreement. Id. at 572. Though that bidding process had first been used in 1973, the employees did not file suit until June 1983. Id. at 572-73. The district court dismissed the action as untimely under Section 10(b), but the Sixth Circuit reversed:

> We . . . hold that where the conduct challenged by employees/union members involves a continuing and allegedly improper practice that causes separate and recurring injuries to plaintiffs, the action is deemed to be in the nature of a continuing trespass. A separate cause of action accrued, therefore, each time defendants implemented the annual bid procedure.

Id. at 575 (internal quotation and citation omitted). The Union in the instant case also has cited cases in which actionable, continuing violations were held to have occurred in other contexts. See, e.g., Bazemore v. Friday, 478 U.S. 385, 394-95 (1986) (wage discrimination in violation of Title VII of the Civil Rights Act of 1964); Marshall v. Manville Sales Corp., 6 F.3d 229, 230-31 (4th Cir. 1993) (employment discrimination in violation of the West Virginia Human Rights Act); Williams v. Norfolk & Western Ry. Co., 530 F.2d 539, 542 (4th Cir. 1975) (racial discrimination in violation of Title VII and 42 U.S.C. § 1981).

VIT, of course, has disagreed. Regarding Sevako as an anomaly in the area of federal labor law, VIT has pointed out that most of the other cases cited by the Union are civil rights cases, and has argued that extending the rule applied in those cases to cases like the one at bar would frustrate "the federal policy favoring prompt and final resolution of labor disputes," and would undermine reliance upon private dispute-resolution mechanisms such as the contract board here. VIT has further argued that, if the continuing-violation theory were

4

applied in the instant case, the Union could entirely circumvent the statute of limitations by challenging the contract board's reading of the agreement every six months.

The District Court "decline[d] to find that the repeated application of the timekeeper policy by VIT constituted a continuing breach of the collective bargaining agreement that tolled the statute of limitations until April 22, 1995." The District Court stated that to rule to the contrary would contravene "the underlying policy of federal labor law of the `relatively rapid disposition of labor disputes.'" See International Union, United Auto. Workers of Am. v. Hoosier Cardinal Corp., 383 U.S. 696, 707 (1966)); accord Metz v. Tootsie Roll Indus., 715 F.2d 299, 304 (7th Cir. 1983), cert. denied, 464 U.S. 1070 (1984).

Though cognizant of the federal policy favoring prompt resolution of labor disputes, we have noted the Supreme Court's recent observation that "even [a limitations period of] six years is not long enough to frustrate th[at policy]." See North Star Steel Co. v. Thomas, ___ U.S. ___, 115 S. Ct. 1927, 1931 (1995) (citing Hoosier Cardinal Corp., 383 U.S. at 707)). Rather than attempt to distinguish the factual patterns that have elicited such observations--an undertaking about which we do not now express any opinion--we have chosen instead to determine whether the continuing-violation theory should be applied in the case at bar by relying principally upon a line of cases emerging from the Supreme Court's decision in Local Lodge No. 1424, Int'l Ass'n of Machinists v. NLRB, 362 U.S. 411 (1960).

In Local Lodge No. 1424, a collective bargaining agreement had been executed by an employer and by a union that did not represent a majority of the employees that the agreement purported to cover. Id. at 412. The agreement contained a "union security clause," under which employees were required to join the union within forty-five days. Id. More than six months after the agreement had been executed, employees filed charges against the union and the employer, alleging that it was an unfair labor practice for an employer and a union to enter an agreement containing such a security clause when the union did not represent a majority of the employees in the bargaining unit. Id. at 414. The Court held that the charges were time-barred by Section 10(b). Id. at 415. The Court rejected the notion that

5

the ongoing enforcement of the agreement was a continuing violation, because "the entire foundation of the unfair labor practice charged was the Union's time-barred lack of majority status when the original collective bargaining agreement was signed." Id. at 417. If the Union had represented a majority of the relevant employees at the time it executed the agreement, the Court pointed out, the security clause would have been entirely unobjectionable; because the unfair labor practice charges were therefore founded upon an occurrence that lay outside the six-month period, the charges were barred by the statute of limitations. Id. at 417-19.

We had occasion to review the Supreme Court's decision in Local Lodge No. 1424 in Cone Mills Corp. v. NLRB , 413 F.2d 445 (4th Cir. 1969). In Cone Mills, the union had asked the employer, in November 1965, to provide information concerning a proposed pension plan. Id. at 448. After receiving no reply, the union again requested the information in December 1965, and again from time to time thereafter. Id. The union filed unfair labor practice charges against the employer in June 1966, more than six months after the initial request for information had been made but within six months of the time its most recent request for information had been refused. Id. We held that the action was not barred by Section 10(b):

> [T]he same request was repeated from time to time after November 9, 1965, and within the period of six months prior to the charging date. Unlike the case of Local Lodge No. 1424 . . . , where there was only one event relied upon to support a charged violation occurring outside the six-month limitation period, and where the Court rejected the "continuing violation" theory, the instant case involves a repetitive succession of events occurring within a period of six months prior to the filing of the charge.

Id. at 448-49.

In Shumate v. NLRB, 452 F.2d 717 (4th Cir. 1971), we were asked to apply the principles articulated in both Cone Mills and Local Lodge No. 1424. During the course of a strike, several employees had resigned from their union and crossed the picket line. Id. at 718. In November 1967, the employees learned that the union had expelled

6

and fined them. Id. In May 1968, when the fines still had not been paid, the union filed suit against the employees in state court. Id. The employees filed unfair labor practice charges against the union in June 1968, claiming that they had resigned from the union and that the union had therefore violated the National Labor Relations Act when it levied the fines and filed suit. Id. at 718. Again relying upon a continuing-violation theory, we held that the action was not barred by Section 10(b). Id. at 720. We reasoned that the "operative facts" underlying the employees' cause of action consisted of the union's filing of charges in state court--an act that occurred well within the six-month period--and that the levying of fines more than six months before the charges were filed was merely evidence"admissible to illuminate the character of the union's more recent tactics." Id. at 719.

To resolve the present dispute, we must therefore determine whether the "operative facts" underlying the Union's complaint consist primarily of the contract board's initial determination that VIT's new timekeepers policy did not violate the collective bargaining agreement and of VIT's implementation of that policy in February 1994--events that took place well before the six-month period preceding the filing of charges--or consist instead of each occasion on which VIT subsequently enforced the board-approved policy. We have concluded that the Union's complaint is primarily rooted in the contract board's February 1994 decision and in VIT's implementation of that policy later that same month.

Section 25 of the collective bargaining agreement provided that all of the contract board's decisions were to be regarded by the parties as "final and binding." VIT's implementation and enforcement of the new timekeepers policy were apparently fully in accord with the contract board's February 1994 decision. Consequently, in order to prevail on its Section 301 claim against VIT, Local 1624 was required to show some reason why--contrary to the terms of the collective bargaining agreement--the February 1994 decision of the contract board should not be regarded as final and binding. See DelCostello, 462 U.S. at 164-65 (stating that, while an employee will ordinarily be bound by the results of a grievance procedure "according to the finality provisions of the [collective bargaining] agreement," an employee can challenge the results of that grievance procedure by bringing a hybrid claim against the union, the employer, or both, alleging that

7

the union represented him in the grievance proceedings in a "discrimi-natory, dishonest, arbitrary, or perfunctory fashion" and that the employer violated the collective bargaining agreement); accord Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 571 (1976). The Union attempted to make such a showing, in its brief to this court and in documents submitted to the District Court, by contending that the contract board's decision was not final and binding because a repre-sentative of the parent union had failed to represent Local 1624 fairly before the board in February 1994. It is therefore clear that the Union's chief quarrel is with the "final and binding" decision ren-dered by the board in February 1994. Because the heart of the Union's complaint lies outside the six-month limitations period, this case is more akin to Local Lodge No. 1424 than to Cone Mills and Shumate, and the action is barred. Compare West v. ITT Continental Baking Co., 683 F.2d 845, 846 (4th Cir. 1982) (refusing to apply the continuing-violation theory because the plaintiff's complaint focused upon his former employer's refusal to amend a decision made outside the applicable three-year limitations period and because, if the theory were applied, the plaintiff could "destroy the policies of finality and repose underlying the statute of limitations" by requesting once every three years that the employer change its decision).

III.

The District Court refused to grant the Union's Rule 56(f)**3** motion to delay ruling on VIT's summary judgment motion until the Union had conducted discovery concerning statements made during a May 2, 1995, meeting of the contract board. In light of our conclusion that the Union's complaint is time-barred, we need not consider the Union's contention that the motion should have been granted.

_____

**3** Rule 56(f) of the Federal Rules of Civil Procedure states:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

We have reviewed the Union's other arguments and find them to be without merit. Accordingly, the judgment is

<u>AFFIRMED</u>.

9