142 N.J. Super. 486 (1976)
362 A.2d 47
ERNEST BELEN, KATHLEEN CLAY, RICHARD GARCIA, PETER A. GRECO, SEABURY HOUGH AND GRACE MALLORY, PLAINTIFFS-APPELLANTS,
v.
WOODBRIDGE TOWNSHIP BOARD OF EDUCATION AND WOODBRIDGE FEDERATION OF TEACHERS LOCAL 822, AMERICAN FEDERATION OF TEACHERS, AFL-CIO, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 18, 1976.
Decided July 6, 1976.
*488 Before Judges LYNCH, LARNER and HORN.
Mr. Jack Wysoker argued the cause for appellants (Messrs. Mandel, Wysoker, Sherman, Glassner, Weingartner and Feingold; Messrs. Wysoker and Richard H. Greenstein on the brief).
Mr. Joseph J. Jankowski argued the cause for respondent Woodbridge Township Board of Education (Messrs. Hutt, Berkow and Hollander, attorneys).
Mr. William A. Cambria argued the cause for Woodbridge Federation of Teachers (Messrs. Sauer, Boyle, Dwyer and Canellis, attorneys).
Mr. Alfred J. Petit-Clair, Jr. filed a brief on behalf of amicus curiae Middlesex County AFL-CIO.
The opinion of the court was delivered by LYNCH, P.J.A.D.
Plaintiffs, six psychologists employed by defendant Woodbridge Township Board of Education (Board) sued the Board and defendant Woodbridge Township Federation of Teachers (Federation), charging that during negotiations between the Board and the Federation looking toward a contract for the 1974-1975 school year the Federation failed to fulfill its duty of representing plaintiffs fairly and without discrimination pursuant to N.J.S.A. 34:13A-5.3. The psychologists alleged that the Federation failed to keep them informed, and in fact dishonestly and intentionally misled them, as to the status of the negotiations with the Board which ultimately resulted in contract provisions which reduced plaintiffs' salaries and increased their working hours. Those plaintiffs who have achieved tenure further alleged that the reduction of their salaries was in violation of N.J.S.A. 18A:6-10.
Plaintiffs sought a judgment: (1) enjoining the Board from paying the reduced salaries and ordering restoration *489 of the prior salaries and working hours pending further negotiations; (2) rescinding that part of the 1974-1975 contract applicable to plaintiffs' working conditions pending such negotiations, and (3) directing defendants to resume negotiations in good faith concerning plaintiffs' working conditions. Following a full trial the judge dismissed plaintiffs' complaint and they appealed. We affirm.
The Federation is the duly certified bargaining agent for the teachers and certain other employees of the Woodbridge school system. There are approximately 1,000 members of the bargaining unit, including the six plaintiffs herein. During the 1973-1974 school year several "child study teams," consisting of a psychologist, a learning disability teacher and a social worker, operated in the school system. Plaintiffs, the psychologists in these teams, enjoyed a more favorable salary status than the other team members since they received a 25% premium above the salary guide, while the learning disability teachers and social workers received, respectively, only the lesser premium of $400 and $500 above the salary guide. All team members had a work day of 8:30 A.M. to 4:00 P.M. and a work year that lasted from approximately Labor Day through the third week in June.
During the negotiations on a new contract, which began on November 1, 1973, one of the goals of the Federation was to bring the learning disability teachers and social workers to parity with the psychologists at the favorable 25% pay differential. The Board sought parity of pay among child study team members but at a 10% differential. The Board further proposed that the working hours of all team members be increased. In the course of negotiations the Federation modified its position on this issue to a demand that all members of the child study teams receive a 20% pay differential but that currently employed psychologists (a category which included the six plaintiffs here) would continue to receive a 25% differential.
Approximately 150 items were the subject of the negotiations. By January 29, 1974 an impasse had developed, and *490 on March 1, 1974 a mediator was appointed by the Public Employment Relations Commission (PERC). The mediator urged the Board and the Federation to establish priorities as to the subjects to be negotiated. The status of the child study team was made a priority by each side. Eventually the mediator was appointed factfinder by PERC. On July 25, 1974 the factfinder presented his recommendations, including the following concerning the child study teams:
School Psychologists, Learning Disability Teacher Consultants, and School Social Workers shall receive 15% above scale, and their work day shall be from 8:30 a.m. through 4:30 p.m. commencing with the Monday of the week prior to Labor Day and ending on June 30th.
Ultimately this recommendation was accepted by both parties and made part of the contract, which was then ratified by the union membership on September 3, 1974. Plaintiffs were the only employees who suffered a pay cut under this contract.
During the course of the negotiations some of the current plaintiffs attempted to obtain from the Federation specific information about the status of the issues that affected them. These requests were rejected in accordance with the Federation's view that disclosing details of the negotiations would hinder progress toward a settlement. Similar requests from other union members were treated in the same manner. Certain of the plaintiffs here also sought to persuade the Federation to permit them to present their own case to the Board's negotiating committee. The Federation refused to allow this.
The failure of the Federation to disclose to plaintiffs from time to time the status of the negotiations which resulted in their lower salaries and expanded working hours is the main thrust of plaintiffs' complaint against the Federation.
Designation as an exclusive bargaining agent under the New Jersey Employer-Employee Relations Act confers on a union broad powers to represent the members of the bargaining unit and to negotiate the terms and conditions of their employment. Along with this power comes the obligation *491 to represent all employees "without discrimination." N.J.S.A. 34:13A-5.3. This duty of fair representation of a union toward its members has received extensive development in the experience and adjudications under the National Labor Relations Act, which we find to be an appropriate guide for the interpretation of our own enactment. See Lullo v. International Ass'n of Fire Fighters, 55 N.J. 409, 424 (1970). In Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the United States Supreme Court stated (at 190, 87 S.Ct. at 916): "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Thus, the mere fact that a negotiated agreement results, as it did here, in a detriment to one group of employees does not establish a breach of duty by the union. The realities of labor-management relations which underlie this rule of law were expressed in Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), where the court wrote:
Any authority to negotiate derives its principal strength from a delegation to the negotiators of a discretion to make such concessions and accept such advantages as, in the light of all relevant considerations, they believe will best serve the interests of the parties represented. A major responsibility of negotiators is to weigh the relative advantages and disadvantages of differing proposals.

* * * * * * * *
Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.
Compromises on a temporary basis, with a view to long range advantages, are natural incidents of negotiation. Differences in wages, hours and conditions of employment reflect countless variables. [at 337-338, 73 S.Ct. at 686.]
See Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964).
*492 In the present case the trial judge found that the Federation did not act in bad faith and that its actions were not deceptive, discriminatory, arbitrary or misleading. There was ample credible evidence in the record to support the judge's findings. They are affirmed. Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 483-484 (1974); State v. Johnson, 42 N.J. 146, 162 (1964).
Plaintiffs also contend that the Federation had a duty to permit them to discuss their own discrete interests and goals with the Board. This cumbersome and fragmentary procedure would place too heavy a burden on what is already a difficult negotiating process. Plaintiffs' position is at odds with the statutory policy of achieving harmonious employer-employee relations through collective bargaining conducted by democratically selected bargaining agents, and we therefore reject it.
There is one remaining contention. Those plaintiffs who have achieved tenure argue that the reduction in their salaries effectuated by the 1974-1975 contract was impermissible under N.J.S.A. 18A:6-10. We note that on June 26, 1975, an appeal was filed with the Commissioner of Education raising this same issue. It is our decision that this question should be litigated before the Commissioner pursuant to his jurisdiction over controversies and disputes arising under the school laws. N.J.S.A. 18A:6-9.
The judgment in favor of defendants is affirmed.