WALTER A. KACZMAREK, JR., CHARGING PARTY-APPELLANT, v. NEW JERSEY TURNPIKE AUTHORITY, NEW JERSEY TURNPIKE EMPLOYEES' UNION, LOCAL 194, IFPTE, AFL-CIO, RESPONDENTS-RESPONDENTS, AND PUBLIC EMPLOYMENT RELATIONS COMMISSION OF THE STATE OF NEW JERSEY, RESPONDENT.

Argued January 23, 1978—Decided August 7, 1978.

*Mr. Ronald J. Nelson* argued the cause for appellant (*Messrs. Craner and Nelson,* attorneys; *Mr. Nelson* and *Ms. Elizabeth A. Truly,* on the brief).

*Mr. Victor J. Parsonnet* argued the cause for respondent New Jersey Turnpike Employees' Union, IFPTE, AFL-CIO (*Messrs. Parsonnet, Parsonnet and Dugan,* attorneys).

*Mr. Bernard M. Reilly* argued the cause for respondent New Jersey Turnpike Authority.

*Mr. Sidney H. Lehmann* submitted a statement in lieu of a brief on behalf of the Public Employment Relations Commission.

The opinion of the court was delivered by

HANDLER, J. The Public Employer-Employee Relations Act, *N. J. S. A.* 34:13A–1 *et seq.,* requires that an unfair practice charge be filed with the Public Employment Relations Commission (PERC), within six months after the alleged unfair practice occurred unless the charging party "* * * was prevented from filing such charge." *N. J. S. A.* 34:13A–5.4(c). The appellant filed unfair practices charges beyond the statutory period of limitations. The issue presented is whether under the circumstances of this case the appellant is entitled to be relieved of the statutory bar to allow the adjudication of his claims.

I

On October 23, 1973, a very serious multi-vehicle accident occurred on the New Jersey Turnpike. The appellant, Walter A. Kaczmarek, Jr., was assigned by his employer, the New Jersey Turnpike Authority, to assist in the cleanup operations. A year and one-half later, the appellant was questioned by the New Jersey State Police concerning a certain truckload of whiskey that had been involved in the accident. The appellant testified that several of his fellow employees had carried off cases of whiskey from the dumping site to the division headquarters. The State Police, however, found no evidence to corroborate appellant's testimony.

Thereafter, on July 15, 1975, the Turnpike Authority notified the appellant that:

As a result of your malicious and unfounded accusations against fellow employees, your employment with the New Jersey Turnpike Authority is hereby terminated * * *.

Your statements to the New Jersey State Police concerning fellow employees have been thoroughly reviewed and found to be baseless. As a result of your actions there has been disruption to the Department and unnecessary anguish to your co-workers.

The discharge was unsuccessfully processed through the grievance apparatus available under the collective agreement by plaintiff's exclusive representative, New Jersey Turnpike Employees' Union, Local 194, IFPTE, AFL-CIO (Union). The Union Executive Board, however, refused to take the matter to arbitration. In its notification letter, dated September 10, 1975, the Union's business manager explained that:

* * * in essence, the [Executive] board agreed [with the Turnpike Authority] that your accusations against fellow employees, having been unfounded, were disruptive of the work force. In addition, your attorney's letter suggested that your defense pursue improper acts alleged against [sic] the investigation, which, if proven, would reopen the question of your fellow-workers' guilt.

As a result of the Union's action, the discharge was deemed "final and binding" under the bargaining agreement.

Immediately thereafter, appellant, through his attorney, attempted to ascertain the appropriate forum through which to pursue his legal remedies against his employer for wrongfully discharging him and the Union for breaching its duty of fair representation by arbitrarily, discriminatorily, and in bad faith refusing to submit the matter to arbitration. Appellant maintains that certain employees of PERC informed his attorney that the Commission did not have jurisdiction over an unfair union representation charge. Accordingly, on December 1, 1975, appellant commenced suit in the Superior Court, Middlesex County, Law Division, seeking redress from the wrongs allegedly committed by both his employer and the Union. Presumably on the ground that PERC by statute, N. J. S. A. 34:13A–5.4(c), had exclusive jurisdiction of the unfair practice charges, defendants included lack of jurisdiction as an affirmative defense in their answers to the complaint.

■ On April 9, 1976 defendants moved to dismiss the complaint on jurisdictional grounds. Appellant, realizing that his Law Division complaint was vulnerable to dismissal, promptly filed, on April 13, 1976, an unfair practice charge with PERC. This, however, was nearly nine months after the alleged wrongful discharge by his employer and seven months and three days after the alleged unfair representation claim arose (*i. e.*, when the union refused to submit the matter to arbitration on September 10, 1975).[1] On April 27, 1976 the court granted defendant's motion and dismissed the complaint for lack of jurisdiction. On June 9, 1976 appellant filed a notice of appeal to the Appellate Division notwithstanding the unfair practice charge then pending before PERC. Thereafter, before any resolution of the PERC proceedings, the Appellate Division dismissed the appeal, ostensibly for "lack of prosecution."[2]

The Turnpike Authority then filed a summary judgment motion with PERC based on the six-month limitation period in *N. J. S. A.* 34:13A–5.4(c), which provides that no unfair practice complaint shall be issued, "* * * based upon any unfair practice occurring more than six months prior to the filing of the charge unless the person aggrieved thereby was prevented from filing such charge." On September 22,

---

[1]PERC chose this latter date as the operative time when the cause of action accrued.

[2]After filing his appeal, appellant moved for a stay of the Appellate Division action on the ground that he was then pursuing relief before PERC. The Turnpike Authority reacted by filing a motion to dismiss. It was this motion which was granted for "lack of prosecution." It would appear that a stay of the appeal or, alternatively, a dismissal without prejudice would have been the appropriate disposition by the Appellate Division in view of the pendency of the PERC case, which necessarily included the issues of jurisdiction and the statute of limitations. The dismissal by the Appellate Division under these circumstances seems questionable and should not be given the effect of a bar on grounds of *res judicata* with respect to the issues of jurisdiction and statute of limitations, as urged by defendants.

1976 PERC granted respondent's motion and dismissed the complaint. PERC concluded that the appellant was not "prevented" within the meaning of the statute from filing a timely charge before the Commission. It reasoned that even assuming the appellant was misinformed by PERC staff members, nevertheless, he was forwarded the appropriate forms by PERC's executive director and a copy of PERC's rules. PERC further held that, as a matter of law, the filing of the complaint in the Law Division did not toll the statutory six-months limitation.

On November 4, 1976 appellant filed a notice of appeal from the PERC decision with the Appellate Division. His position on appeal was that the equitable doctrine of tolling the statute of limitations should be applied to avoid hardship and injustice. He argued alternatively that PERC has no jurisdiction over unfair representation claims, or if it does, its jurisdiction is concurrent.

On April 7, 1977 the Appellate Division, in an unpublished opinion, found that "PERC properly dismissed appellant's complaint on the ground that it was filed out of time." The court thus found it "unnecessary" to decide the jurisdictional question, additionally implying that that issue, in any event, had been foreclosed by appellant's failure to prosecute the earlier appeal from the Law Division action.

The appellant filed a petition for certification, relying solely on the question as to whether the six-months limitation period should be tolled. Certification was granted. 75 N. J. 16 (1977).

II

The "New Jersey Employer-Employee Relations Act", N. J. S. A. 34:13A–1 et seq. (hereinafter "the Act"), is a comprehensive legislative scheme promulgated to serve the best interests of the people of the State by the prevention or prompt settlement of labor disputes. N. J. S. A. 34:13A–2. The Act provides, inter alia, for a "Public Employment Re-

lations Commission", *N. J. S. A.* 34:13A–5.2, which is given "exclusive power * * * to prevent anyone from engaging in any unfair practice", *N. J. S. A.* 34:13A–5.4(c), as enumerated in *N. J. S. A.* 34:13A–5.4(a) (unfair practices of employers) and *N. J. S. A.* 34:13A–5.4(b) (unfair practices of employee organizations). A person aggrieved by an unfair practice is authorized to file a "charge" with PERC, whereupon PERC must commence the appropriate administrative proceedings to resolve the controversy.

This statutory authority to entertain and adjudicate unfair practices was conferred upon PERC as a result of the earlier conclusion in *Burlington Cty. Evergreen Pk. Mental Hosp. v. Cooper,* 56 *N. J.* 579 (1970) that the law, as first enacted, did not empower PERC to process unfair practices complaints. See *Galloway Twp. Bd. of Ed. v. Galloway Twp. Assoc. of Ed. Sec'ys,* 78 *N. J.* 1, 8 n. 2 (1978). The statute which conferred upon PERC the authority to process unfair practices claims also imposed the six-months period within which such claims must be brought. It is the invocation of this statutory limitations to bar appellant's claim by PERC which has generated the issue on appeal.

 The reasons for a statutory limitation on actions must be examined in confronting the issue whether in this case the statutory period should be relaxed to permit the late filing of the unfair practices claim. It is acknowledged generally that the primary purpose behind statutes of limitation is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend, *Union City Housing Auth. v. Commonwealth Trust Co.,* 25 *N. J.* 330, 335 (1957); another is to stimulate litigants to pursue their causes of action diligently and to prevent the litigation of stale claims. *Farrell v. Votator, Div. of Chemetron Corp.,* 62 *N. J.* 111, 115 (1973). See generally *Burnett v. N. Y. Cent. R. R.,* 380 *U. S.* 424, 428 & n. 4, 85 *S. Ct.* 1050, 1053 & n. 4, 13 *L. Ed.* 2d 941, 945 & n. 4 (1965). The prompt filing and expeditious

processing of charges are especially important in the volatile field of employer-employee relations. In addition to preserving the immediacy of the record, administrative celerity stabilizes existing bargaining relationships, *Local Lodge 1424, Int'l Assoc. of Machinists v. N. L. R. B.*, 362 *U. S.* 411, 419, 80 *S. Ct.* 822, 828, 4 *L. Ed.* 2d 832, 830 (1960) and inhibits the festering or aggravation of labor disputes. *II Hearings before the New Jersey Public Employer-Employee Relations Study Commission* (*L.* 1974, *c.* 124) at 42X (April 30, 1975) (Statement by Gerald L. Dorf). Moreover, a period of limitation acts to weed out stagnant and possibly frivolous or vexatious claims. Additionally, changing circumstances following an employer-employee controversy add a dimensional complexity to the adjudication and remediation of unfair practices; the passage of time may serve to render many meritorious claims "moot" without proper resolution. *Cf. Galloway Twp. Bd. of Ed. v. Galloway Twp. Assoc. of Ed. Sec'ys, supra.* Thus, the six-months period in *N. J. S. A.* 34:13A–5.4(c) serves important policies which may not lightly be disregarded.

■ By the same reasoning, it would be derelict for the Court to apply strictly and uncritically a statutory period of limitations without considering conscientiously the circumstances of the individual case and assessing the Legislature's objective in prescribing the time limitation as related to the particular claim. *Burnett v. N. Y. Cent. R. R., supra,* 380 *U. S.* at 426, 85 *S. Ct.* at 1053, 13 *L. Ed.* 2d at 944; *White v. Violent Crimes Comp. Bd.,* 76 *N. J.* 368, 379 (1978).

■ In probing the legislative design, some significance is attributed to the circumstance that the six-months period of limitation was enacted with the jurisdictional grant over unfair practices. However, the juxtaposition of the right to process unfair practices with the six-months period of limitation in the same statutory provision creating the right is not alone dispositive of whether the Legislature thereby intended that the limitation qualify or condition the right it-

self. *Burnett v. N. Y. Cent. R. R., supra,* 380 *U. S.* at 427 n. 2, 85 *S. Ct.* at 1054 n. 2, 13 *L. Ed.* 2d at 944 n. 2.

In *White v. Violent Crimes Comp. Bd., supra,* this Court discussed extensively the distinction between a statute of limitations which is "remedial" and one which imposes a "substantive" or "jurisdictional" prerequisite, 76 *N. J.* 368, at 374–379: the former affects only the right to enforce the remedy and not the substantive right itself whereas the latter inheres in the right and is said to "extinguish the underlying right as well as to bar the remedy." *Id.* at 374. A limitation contained in a statute creating a new right was generally considered a condition precedent to the existence of the right itself, *i. e.,* if not met by the charging party, that party's complaint would fail. *United States v. Studivant,* 529 *F.* 2d 673 (3 Cir. 1976); *Marshall v. George M. Brewster & Son, Inc.,* 37 *N. J.* 176, 181 (1962). Nevertheless, federal cases which have interpreted the similar provision of the National Labor Relations Act, 29 *U. S. C.* § 160(b) (now within the National Labor Management Relations Act, 29 *U. S. C.* § 141 *et seq.*) have found the six-months period to be a simple statute of limitations and not a jurisdictional prerequisite. See, *e. g., N. L. R. B. v. Local 264, Laborers' Int'l Union of North America,* 529 *F.* 2d 778 (8 Cir. 1976); *Shumate v. N. L. R. B.,* 452 *F.* 2d 717 (4 Cir. 1971); *A. H. Belo Corp. v. N. L. R. B.,* 411 *F.* 2d 959 (5 Cir. 1969), *cert.* den. 396 *U. S.* 1007, 90 *S. Ct.* 561, 24 *L. Ed.* 2d 498 (1970); *N. L. R. B. v. Silver Bakery, Inc.,* 351 *F.* 2d 37 (1 Cir. 1965). See also *Lullo v. Int'l Assoc. of Fire Fighters, Local 1066,* 55 *N. J.* 409 (1970) (the N. L. R. A., where pertinent, is instructive as to the interpretations of our own statute). In any event, in *White* we eschewed such "mechanistic" approaches for a more flexible legislative-purpose test. *White v. Violent Crimes Comp. Bd., supra,* 76 *N. J.* at 378–379.

█ In the instant case, the Legislature, by its very choice of expression, evinced a purpose to permit equitable considerations to be brought to bear. It did not couch the period of limitations in terms of a flat and absolute bar but instead

stated expressly that the limitation of the action shall be tolled if the charging party is "prevented" from filing within the six-months period. *N. J. S. A.* 34:13A–5.4(c). The term "prevent" may in ordinary parlance connote that factors beyond the control of the complainant have disabled him from filing a timely complaint. Nevertheless, the fact that the Legislature has in this fashion recognized that there can be circumstances arising out of an individual's personal situation which may impede him in bringing his charge in time bespeaks a broader intent to invite inquiry into all relevant considerations bearing upon the fairness of imposing the statute of limitations. *Cf. Burnett v. N. Y. Cent. R. R., supra,* 380 *U. S.* at 429, 85 *S. Ct.* at 1055, 13 *L. Ed.* 2d at 946. The question for decision becomes whether, under the circumstances of this case, the equitable considerations are such that appellant should be regarded as having been "prevented" from filing his charges with PERC in timely fashion.

■ An employee, to be "prevented" from filing within the terms of the statute (*N. J. S. A.* 34:13A–5.4(c)), need not have been fettered only by factors that are totally beyond his control. Indeed in a distinctly analogous case, *Burnett v. N. Y. Cent. R. R., supra,* the Supreme Court of the United States observed that "[s]tatutes of limitations are primarily designed to assure fairness to defendants," and that "[t]his policy of repose" with respect to the right to recovery under the Federal Employers' Liability Act, 45 *U. S. C.* § 51 *et seq.,* would be "outweighed" where "a plaintiff has not slept on his rights but, rather, has been prevented from asserting them." 380 *U. S.* at 428–429, 85 *S. Ct.* at 1054–1055, 13 *L. Ed.* 2d at 945–946. The Court found such prevention where the petitioner

\* \* \* did not sleep on his rights but brought an action within the statutory period in a state court of competent jurisdiction. Service of process was made upon the respondent notifying him that petitioner was asserting his cause of action. \* \* \* Petitioner, then, failed to file an FELA action in the federal courts, not because he was disinterested, but solely because he felt that his state action was suf-

ficient. Respondent could not have relied upon the policy of repose embodied in the limitation statute, for it was aware that petitioner was actively pursuing his FELA remedy; in fact, respondent appeared specially in the Ohio court to file a motion for dismissal on grounds of improper venue.

[330 *U. S.* at 429, 85 *S. Ct.* at 1055,
13 *L. Ed.* 2d at 946].

Here also, appellant at no time "slept on his rights." He filed his Superior Court suit within three months of the Union's refusal to arbitrate, the date which PERC determined to be the point of time when the action accrued. As noted by the United States Supreme Court in *Goldlawr, Inc. v. Heiman,* 369 *U. S.* 463, 467, 82 *S. Ct.* 913, 916, 8 *L. Ed.* 2d 39, 42 (1962), "[t]he filing [of a lawsuit] itself shows the proper diligence on the part of the plaintiff which statutes of limitation were intended to insure." In addition, the record reveals no suggestion of bad faith or purposeful delay or harassment on his part in instituting suit in the Superior Court instead of PERC. Indeed, that very decision may have been prompted by a misunderstanding between appellant's attorney and PERC staff members as to whether or not PERC would assert jurisdiction over the charges. Once he discovered that his Law Division suit might be dismissed appellant again acted promptly by immediately filing the PERC action. Moreover, he sought to clarify his rights by appealing the dismissal of the Law Division action and then staying the appeal pending a determination by PERC. *Ante* at 335 n. 2.

Furthermore, respondents Turnpike Authority and Union have not shown that they were in any way prejudiced by appellant's late filing for they had timely notice of the substance of appellant's charges against them as a result of the Superior Court action, see, *e. g., R. L. Mulliken v. City of Englewood,* 59 *N. J.* 1, 4 (1971), and indeed readily perceived the jurisdictional flaw in that suit by securing its dismissal.

Given the remedial purpose of the Act, the statute contemplates, in the context of this case, a reasonable error on the part of an employee as to the proper forum within which to adjudicate his claim; this is especially so when the law underlying the party's claim was untested. For example, in *Goger v. H. K. Porter Co.*, 492 *F.* 2d 13 (3 Cir. 1974), the Third Circuit stated that:

> While we do not consider the failure to file a timely complaint with the appropriate state agency a mere "technical" omission, we nonetheless consider equitable relief to be appropriate in view of the total absence, to our knowledge, of any judicial decision construing section 633(b) [of the Age Discrimination in Employment Act of 1967, 29 *U. S. C.* § 621 *et seq.*] during the period involved here and in view of the remedial purpose of the 1967 Act.
>
> [*Id.* at 16–17].

With regard to appellant's unfair representation claim against the Union, there were then no judicial decisions dealing with PERC's jurisdiction over such claims. The statute, at the filing of the complaint, was relatively new and unexplored. Previously unfair representation suits under the federal scheme had been recognized as within the competence of the courts, see, *e. g.*, *Donnelly v. United Fruit Co.*, 40 *N. J.* 61 (1963); *P. T. L. Const. Co. v. Teamsters Local 469,* 131 *N. J. Super.* 104 (Law Div. 1974), aff'd 66 *N. J.* 97 (1974), and indeed a contemporaneous Appellate Division decision under the new statute failed to raise any question as to the courts' right to exercise jurisdiction over unfair practices claims. *Belen v. Woodbridge Twp. Bd. of Ed.,* 142 *N. J. Super.* 486 (App. Div.), certif. den. 72 *N. J.* 458 (1976). It was not until *Patrolman's Benev. Assoc., Local 53 v. Montclair,* 70 *N. J.* 130 (1976), that there was a firm indication by our court that unfair practices charges initially brought in the State court system could even be transferred to PERC. Moreover, *N. J. S. A.* 34:13A–5.4, which confers jurisdiction over unfair practices to PERC, does not expressly list unfair representation as an unfair practice. Under these cir-

cumstances the misfiling of the unfair representation charge may be viewed as an understandable mistake.[3]

■ Ordinarily, the commencement of an action in a court which lacks jurisdiction of the subject matter will not toll the statute of limitations. 54 *C. J. S. Limitations of Actions* § 247 at 270. A federal court exception to the general rule was stated in *Ellis v. Lynch,* 106 *F. Supp.* 100 (D. N. J. 1952):

> The commencement of an action in a court which lacks jurisdiction of the subject matter will toll the statute of limitations if the court has the authority under the law to transfer the action to a court of competent jurisdiction. Herb v. Pitcairn, 324 U. S. 117, 65 S. Ct. 459, 89 L. Ed. 789 and 325 U. S. 77, 65 S. Ct. 954, 89 L. Ed. 1483.
>
> [*Id.* at 102].

Compare *Covington v. United States, Dep't of Air Force,* 303 *F. Supp.* 1145, 1148 (N. D. Miss. 1969) (filing of an action in a court which had neither jurisdiction of the action, nor the power to transfer the action to the proper court, did not operate to toll the statute of limitations).

■ Under our rules and the judicial interpretations thereof, the Law Division had the power to transfer the case to an administrative agency. *R.* 1:13–4 states in pertinent part that:

> * * * if any court is without jurisdiction of the subject matter of an action * * *, it shall, on motion or its own initiative, order the action * * * transferred to the proper court, if any, in the State. The action shall then be proceeded upon as if it had been originally commenced in that court.

---

[3]As noted, the Law Division found that PERC had exclusive authority over unfair representation claims. We do not find it necessary to address this issue. We point out that the nature and extent of the exclusivity of PERC's jurisdiction has not yet been adjudicated. See, *e. g., Galloway Twp. Bd. of Ed. v. Galloway Twp. Ed. Assoc.,* 78 *N. J.* 25 (1978) ; *Red Bank Reg. Ed. Assoc. v. Red Bank Reg. High School Bd. of Ed.,* 78 *N. J.* 122 (1978).

Although the rule does not expressly give the courts power to transfer a case to an administrative tribunal, two recent cases found such power to exist. *Patrolman's Benev. Assoc., Local 53 v. Montclair, supra,* 70 *N. J.* at 136; *Patrolman's Benev. Assoc., Local 4 v. City of Elizabeth,* 146 *N. J. Super.* 257, 263 (App. Div. 1976). Indeed, this rule has been recently amended to include specifically the power of the court to transfer the case to either *"\* \* \* the proper court or administrative agency"* and upon such transfer *"\* \* \* the action* shall then be proceeded upon as if it had been originally commenced in that court *or agency"* (amendment emphasized). *R.* 1:13–4 (approved July 21, 1978; effective September 11, 1978).

Here the appellant originally filed his case in the Law Division. Once the trial judge ascertained that he did not have subject matter jurisdiction, he should have transferred the case to PERC. Under the circumstances of this case, had he done so the charge would have been timely brought before the proper tribunal. The Law Division's failure to transfer the case to PERC and thus preserve appellant's timely filing constitutes another mitigating circumstances to be weighed in sustaining appellant's claim.

Thus, under the particular circumstances of this case, the statute of limitations contained in *N. J. S. A.* 34:13A–5.4(c) does not constitute a bar to the charges herein. Compare *Patrolman's Benev. Assoc., Local 53 v. Montclair, supra.* Those charges should remain lodged with PERC and be allowed to proceed in normal course. Respondents, of course, are free to assert any additional defenses which are available to them.

The judgment of the Appellate Division is reversed and the case is remanded to PERC for proceedings not inconsistent with this opinion.

PASHMAN, J., concurring. An exclusive majority representative of a unit of public employees is, by virtue of that

status, charged with a fiduciary responsibility fairly to represent the interests of those employees. This duty of fair representation was the subject of statutory codification in the original Employer-Employee Relations Act (the Act), *L.* 1968, *c.* 303, *N. J. S. A.* 34:13A–5.3. This Court recognized the interrelationship between the principle of exclusive majority representation and the duty of fair representation in *Lullo v. Intern. Ass'n of Fire Fighters,* 55 *N. J.* 409 (1970), where we noted that a majority representative

> * * * cannot lawfully refuse to perform or neglect to perform fully and in complete good faith the duty, which is inseparable from the power of exclusive representation, to represent the entire membership of the employees in the unit.
>
> [55 *N. J.* at 429]

*See also Vaca v. Sipes,* 386 *U. S.* 171, 190, 87 *S. Ct.* 903, 17 *L. Ed.* 2d 842 (1967); *Donnelly v. United Fruit Co.,* 40 *N. J.* 61 (1963); *Belen v. Woodbridge Tp. Bd. of Ed.,* 142 *N. J. Super.* 486, 490–491 (App. Div.), certif. den. 72 *N. J.* 458 (1976); *see generally* Summers, The Individual Employee's Rights Under the Collective Agreement: What Constitutes Fair Representation? 126 *U. Pa. L. Rev.* 251 (1977).

In response to this Court's decision in *Burlington Cty. Evergreen Park Ment. Hosp. v. Cooper,* 56 *N. J.* 579 (1970), the Legislature enacted *L.* 1974, *c.* 123, § 1 granting the Public Employment Relations Commission exclusive jurisdiction to adjudicate and remedy unfair practices as therein defined. *N. J. S. A.* 34:13A–5.4. As the Court notes, *N. J. S. A.* 34:13A–5.4(b) does not expressly list a breach of the duty of fair representation as an unfair practice on the part of an employee organization, although it is arguably subsumed in *N. J. S. A.* 34:13A–5.4(b)(1). The private-sector counterpart of that provision of the Act, § 8(b)(1)(A) of the National Labor Relations Act, 29 *U. S. C.* § 158(b)(1)(A), has been held to encompass violations of the duty of fair representation. *Miranda Fuel Co.,* 140 *NLRB* 181 (1962), enforcement denied, 326 *F.* 2d 172 (2 Cir. 1963).

However, the United States Supreme Court has emphatically rejected the contention that the National Labor Relations Board's assertion of jurisdiction over unfair representation claims preempts private suits by a victimized employee against the offending union. *Vaca v. Sipes, supra,* 386 *U. S.* at 176–188, 87 *S. Ct.* 903. Suits alleging a breach of the duty of fair representation were held not to be preempted by the National Labor Relations Board's exclusive jurisdiction over unfair labor practices. *Id.* The Court refused to construe the unfair labor practice provisions of the NLRA to

> \* \* \* oust the Courts of their traditional jurisdiction to curb arbitrary conduct by the individual employee's statutory representative.
> [*Id.*, at 183, 87 *S. Ct.* at 913]

We have intimated no view with respect to the question of the exclusivity *vel non* of PERC's jurisdiction over unfair representation claims, as resolution of that issue is unnecessary to the disposition of this appeal. Hence, we need not consider whether the Supreme Court's rationale in *Vaca* would be the proper approach to the exclusivity question in public employment labor relations in New Jersey. The fact that the existence of the duty of fair representation antedated PERC's jurisdiction over unfair practices combined with the fact that the Legislature did not explicitly enumerate an unfair practice in *N. J. S. A.* 34:13A–5.4(b) for unfair representation might suggest that the Legislature did not intend PERC's role in remedying a majority representative's breach of the duty of fair representation to be exclusive. However, resolution of this important question must await an appropriate future case.

Our disposition of this appeal should not in any way be construed as an implicit approval of the ruling of the Law Division, *see ante* at 335, that PERC's jurisdiction of unfair representation claims is preemptive.

PASHMAN, J., concurring in the result.

*For reversal and remandment*—Chief Justice HUGHES, Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER and Judge CONFORD—7.

*For affirmance*—None.