693 A.2d 129

JOSEPHINE RIENZI, PLAINTIFF–RESPONDENT, v.
GERARD RIENZI, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 10, 1996—Decided April 29, 1997.

Before Judges PRESSLER, STERN and WECKER.

*Garrity, Graham & Favetta,* attorneys for appellant (*Richard T. Garofalo,* on the brief).

*David E. Slaff,* attorney for respondent (*Mr. Slaff,* on the brief).

The opinion of the court was delivered by

WECKER, J.S.C. (temporarily assigned).

Defendant Gerald Rienzi appeals from a post-judgment order entered pursuant to a 1986 divorce judgment, requiring him to make certain payments to plaintiff Josephine Rienzi as equitable distribution of her share of his state pension benefits. After a

plenary hearing, the motion judge concluded that Gerald had not fulfilled his obligation to Josephine with respect to his retirement pension from the Public Employees Retirement System (PERS) and granted her relief accordingly.

The parties had been married for thirty-seven years when their contested divorce went to trial in 1986. Defendant was still employed by the State at that time. The trial resulted in a judgment that provided, *inter alia,* for Josephine to receive a percentage of Gerald's monthly pension benefits once he retired, and to have the option of electing to receive survivor's benefits under his pension. In the event she so elected, her share of Gerald's reduced monthly benefits would be further reduced by ten percent.[1] The judgment provided that the election was an "option she can make at some later date" without specifying the means by which she was to make the election and without placing any time limit on her right to do so.

Gerald did not retire until July 1, 1993, motivated both by having undergone cancer surgery in May 1993 and the availability of an attractive early-retirement offer that expired on July 1. The Division of Pensions set a deadline for electing a survivor's benefit and designating an irrevocable beneficiary. The record reflects that only Gerald, not Josephine, had notice of the deadline for the beneficiary designation or that it would be irrevocable once he began to receive his monthly benefits. Upon retirement, Gerald elected the pension option that provided the largest monthly survivor's benefit in exchange for accepting the lowest monthly benefit to him.[2] However, Gerald named his fiancee as the

---

[1] Josephine's share was to be one-half of a percentage representing the portion of total benefits earned during the marriage. At Gerald's retirement in 1993 that percentage was determinable and there is no dispute that Josephine was entitled to thirty percent of Gerald's monthly benefits as her share of the pension asset if she did not elect a survivor's benefit.

[2] The two relevant options were:

(1) Gerald to receive $1,653.18 per month and no survivor's benefits, which would entitle Josephine to $495.96 (30%) per month from Gerald; and

beneficiary. When Josephine learned about that designation, she brought a post-judgment motion seeking relief against defendant. Gerald then entered into an agreement with Josephine that resulted in a January 6, 1994 consent order modifying Gerald's monthly payment to Josephine downward to $340 and requiring him to take the necessary steps to change the beneficiary and to designate Josephine.[3] The change was rejected by the Division of Pensions as untimely, and Josephine brought this motion.

After an evidentiary hearing on this motion, the judge concluded that Gerald had no right to name another beneficiary, depriving Josephine of her opportunity to elect to receive survivor's benefits. As a result, the judge held that Josephine was entitled to compensation, and ordered an increase in Gerald's monthly payments to Josephine out of his pension benefits; made the increase retroactive to Gerald's retirement date; and ordered "that the plaintiff is entitled to a judgment for damages *in futuro* for lost survivor pension benefits, provided the plaintiff survives the defendant."

■ Based upon our review of the record and the arguments of counsel, in light of the applicable law, we are satisfied that a resolution of the entire matter depends upon a final determination of the parties' attempt to have PERS change the beneficiary designation in conformity with the final divorce judgment and the January 6, 1994 consent order. We therefore vacate the order entered by the Chancery Division. We transfer the issue of Gerald's change-of-beneficiary designation to PERS. *See R.* 1:13–4. We remand the matter to the Chancery Division and stay further action by the court pending a final determination of Gerald's request to PERS to amend his beneficiary designation.

---

(2) Gerald to receive $1,272.95 per month with his surviving beneficiary to receive the same for her lifetime. This option entitled Josephine to $343.70 per month (30% less 10%) from Gerald.

[3] The consent order also included resolution of many financial issues that are not the subject of this motion.

There is nothing in the record before us to suggest that the matter was pursued administratively through PERS. Unlike the plaintiff in *Cleveland v. Bd. of Trustees, Police and Firemen's Retirement System*, 229 *N.J.Super.* 156, 550 *A.*2d 1287 (App.Div. 1988), neither party here pursued an administrative remedy by appealing the refusal of the Division of Pensions to accede to the parties' request.[4] We note, however, that the Division's written refusal by letter of January 12, 1994 [5] to Gerald's attorney did not include the required notice of the right to appeal. *See N.J.A.C.* 17:2–1.7.[6] *See also N.J.S.A.* 52:14B–9. That letter states as the basis for its refusal:

It has been the policy since the Division's inception that, once a retirement became due and payable, neither the retirement option or the designated beneficiary under the retirement option could be changed even with a court order. I believe that this was implemented in order to protect the financial integrity of our retirement systems.

The letter goes on to say that because Gerald's benefits "became due and payable around August, 1993" the beneficiary cannot be

---

[4] The record supports the judge's conclusion that Josephine attempted to communicate with the Division of Pensions prior to Gerald's retirement, as well as around his retirement date and before Gerald's monthly benefits were first paid.

[5] That letter was a response to receipt of a copy of the January 6 order which required Gerald to change his beneficiary and, after noting that the Division of Pensions had not been served with the motion, provided twenty days after service of the order within which the Division could contest the order. Neither the Division nor PERS participated in the litigation.

[6] *N.J.A.C.* 17:2–1.7 provides:

The following statement shall be incorporated in every written notice setting forth the Board's determination in a matter where such determination is contrary to the claim made by the claimant or his legal representative:

"If you disagree with the determination of the Board of Trustees in this matter, you may appeal by sending a written statement to the Board within 45 days from the date of this letter informing the Board of your disagreement and all of the reasons therefor. If no such written statement is received within the 45–day period, this determination shall be considered final."

changed. The record therefore shows that there was never a final administrative determination of the change-of-beneficiary issue.

■ The Chancery Division does not have jurisdiction to order the beneficiary change. Jurisdiction is in the administrative agency, PERS. *See N.J.S.A.* 43:15A–17. Thus, the motion judge should have transferred that issue by authority of *R.* 1:13–4(a) to PERS for determination. *See, e.g., Kaczmarek v. New Jersey Tpk. Auth.,* 77 *N.J.* 329, 343–44, 390 *A.*2d 597 (1978); *Theodore v. Dover Bd. of Educ.,* 183 *N.J.Super.* 407, 413, 444 *A.*2d 60 (App.Div. 1982). *See also Abbott v. Burke,* 100 *N.J.* 269, 301, 495 *A.*2d 376 (1985). It appears likely that PERS would comply with the request if given an opportunity to fully consider that request and the circumstances. *Cf. Steinmann v. State of New Jersey, Dep't. of Treasury, Div. of Pensions,* 116 *N.J.* 564, 573, 562 *A.*2d 791 (1989).

It appears to us that the pension fund would suffer no prejudice and no damage to its "financial integrity" by the requested beneficiary change. Changing the beneficiary appears to affect only one actuarial factor material to the calculation of Gerald's monthly benefits when he retired. That factor is the age of the beneficiary.[7] It is plain from the record that Gerald's named beneficiary was born in 1940 and is thus considerably younger than Josephine, who was married to Gerald in 1949. It therefore appears that the pension fund would be burdened only to the extent of a recalculation of Gerald's current and Josephine's future benefits as a result of Josephine's designation as beneficiary. While Gerald's benefits would have to be recalculated, and proba-

---

[7] The record includes a summary of the retirement benefit options which explains, in the event a survivor's benefit is chosen:

> [O]nce your retirement has become due and payable, no beneficiary change can be made regardless of the circumstances. If your designated beneficiary dies before you, your monthly retirement allowance will not increase. Your age and the age of your beneficiary determine how much your pension will be reduced—the younger the beneficiary, the more your pension is reduced since a younger beneficiary has a greater life expectancy and, therefore, is expected to receive a pension for many years after your death.

bly increased, the increase would be offset in an actuarial sense by a reduced future liability. In *Cleveland v. Bd. Of Trustees, supra,* we rejected the burden alleged by the police retirement fund in having to make monthly payments to a second payee on account of equitable distribution. In this age of computers, we suspect that the necessary actuarial computations and adjustments to amounts previously paid out would represent a minimal burden. We also suspect that relatively few cases with similar circumstances are likely to arise. Nevertheless, we recognize that PERS has not participated in this litigation and has not yet had the opportunity to address this issue. Upon transfer, PERS will have the opportunity to consider all of the circumstances and may well be satisfied to permit the change.

We direct PERS to complete its proceedings within sixty days and to send a copy of its determination to the parties and the Chancery Division. If the change in Gerald's beneficiary designation is effectuated consistent with the divorce judgment and the parties' subsequent agreement to protect Josephine's right to receive survivor's benefits, there would be no substantial issues remaining for the Chancery Division. The parties' settlement agreement reflected in the January 6, 1994 consent order could then be enforced, including appropriate recalculation of the monthly payments owed by Gerald to Josephine retroactive to July 1, 1993.

If, on the other hand, there is a final determination upholding the refusal to substitute Josephine as the beneficiary, the motion judge shall reconsider and order the appropriate relief consistent with this opinion.

■ We find ample support in the record for the judge to have concluded that

Mr. Rienzi was making a choice to reduce the monies that would be payable under the pension, and therefore, payable to Ms. Rienzi. And he had an additional duty before he did that to communicate with her or certainly could not designate a survival beneficiary because it was contrary to her financial interest.

And I think to my mind, the judgment of divorce contemplated that if a survival beneficiary was to be designated that was solely within the domain of Ms. Rienzi

> because any other interpretation would leave her subject to his determination which would reduce the benefits payable to her without any compensatory adjustment in her favor. She alone retained that option.... ·
>
> And that doesn't answer the question as to what's equitable under these circumstances. Whether there will be damages depends upon what happens in the future. Whether monies that may ultimately be payable to the designated survival beneficiary are available for attachment to Ms. Rienzi [is] an issue that's not before us and that beneficiary is not a party to these proceedings.

*See Rova Farms Resort, Inc. v. Investors Ins. Co. of America,* 65 *N.J.* 474, 483–84, 323 *A.*2d 495 (1974).[8] The record compels the judge's conclusion that Gerald knowingly and intentionally provided for his fiancee to receive survivor's benefits, thereby depriving Josephine of her right to elect those benefits. Upon remand, the parties shall be bound by those findings.

We have two problems with the judge's disposition based upon those findings. First, the order awards Josephine "damages *in futuro* " to compensate for her loss of survivor's benefits. Such damages would likely be impractical to calculate or collect. Second, the order provides Josephine with a double recovery if its terms are enforced and "damages *in futuro* " are collected. That is so because the order provides Josephine with both the maximum monthly benefit ($495.95) she would have collected from PERS during Gerald's lifetime had she not elected survivor's benefits, and the right to future damages to compensate for her loss of survivor's benefits. She cannot have both. The judge failed to recognize that if Josephine had been able to elect survivor's benefits, she could not have continued to receive $495.95 per month. Her benefits would have been reduced.[9]

■ There is a way to make plaintiff whole without duplication of remedies. That is to provide an annuity for Josephine's life, to

---

[8] The judge also found Gerald to be acting "with one exception" in "good faith." We understand that exception to be the naming of another beneficiary.

[9] We cannot determine from the record whether $1,272 per month is the maximum survivor's benefit irrespective of the age of the survivor, or whether a larger sum would be paid to an older beneficiary with an actuarially shorter life expectancy.

be purchased at Gerald's expense, with benefits equivalent to what she would have received as his successor beneficiary under the payment option he chose.[10]  Our point is that if the change-of-beneficiary designation cannot be made, the judge must effectuate the January 6, 1994 consent order as closely as possible.  In any event, the matter shall be stayed until a final determination of the change-of-beneficiary issue.

The order of the Chancery Division is vacated.  We transfer the issue of the change-of-beneficiary designation to PERS to be resolved within sixty days.  We remand the matter to the Chancery Division for further action consistent with this opinion and stay such action pending a final determination of the change-of-beneficiary issue pursuant to the transfer to PERS.  We do not retain jurisdiction.

---

[10] Obviously no one can know how long Gerald will live or whether Josephine will in fact survive him.  We therefore direct the calculations to be made based upon Gerald's life expectancy as set forth in the tables included in Appendix I to the Court Rules.