**LITTLE ROCK AIRMOTIVE, INC.,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

No. 20350.

United States Court of Appeals,
Eighth Circuit.

Feb. 9, 1972.

Charles J. Lincoln, Philip K. Lyon, Little Rock, Ark., for petitioner; House, Holmes & Jewell, Little Rock, Ark., of counsel.

Charles N. Steele, Atty., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Michael S. Winer, Atty., N.L.R.B., for respondent.

Before MATTHES, Chief Judge, BRIGHT, Circuit Judge, and WEBSTER, District Judge.*

MATTHES, Chief Judge.

This case is before the court on the petition of Little Rock Airmotive, Inc. for review, and the cross-application of the Board to enforce, the Board's order requiring the Company to reinstate seven economic strikers with backpay retroactive to the date openings occurred in the job classification. The Board's decision is reported at 183 N.L.R.B. No. 98.

The circumstances preceding this order warrant some explication. After a Board-conducted election, the charging party herein, International Association of Machinists and Aerospace Workers, AFL-CIO, Local 997, was certified by the Board on July 9, 1968, as representative of the Company's employees. When the subsequent, protracted negotiations were unfruitful, the union went out on economic strike from January 21 through January 31; the contract being agreed to on the latter date.

During this strike, the Company continued full operations by employing nonstrikers and replacing strikers with new employees. After the strike, the union as agent for the employees offered the unconditional return of all strikers. Additionally, most of the strikers individually conveyed that message to the Company.

The Company simply pursued its usual method of filling vacancies as they occurred by hiring from among jobseekers present at the corporate "gates" on the particular day. By letters to the union and the individual striking employees the Company refused either to reinstate them immediately or to put them on a preferential hiring list. The Company said it would treat the strikers only as new applicants.

The union charged this conduct was violative of § 8(a)(1) and (3) as to several strikers not reinstated when openings had arisen in their classifications. The Trial Examiner heard the evidence as to the eight [1] involved and, finding himself bound by the Board's decision in The Laidlaw Corp., 171 N.L.R.B. No. 175, 1968–1 C.C.H. N.L.R.B. 29,882 (1968), applied that doctrine to his findings of fact and concluded there had been a violation as to five employees. He found the failure to reinstate Kenneth Thompson and Walter Ogden to be supportable by their having taken "regular and substantially equivalent employment" elsewhere.[2]

---

* Eastern District of Missouri, sitting by designation.

1. On May 9, 1969, the Board had issued a complaint as to nine employees, but one of those was subsequently rehired.

2. The eighth, Ralph Smith, was found by the Examiner to have been refused reinstatement because before the strike he had been a new employee on probation whom

The Board agreed with the Examiner's finding a violation as to the five he suggested be reinstated, but disagreed with the finding that Thompson and Ogden had found regular and substantially equivalent employment, and thus also found a violation as to them. Adjusting the Examiner's recommendations to place these two on the preferential list in order of seniority, the Board issued the order described above.

## I. THE SOUNDNESS OF THE LAIDLAW DOCTRINE

■■ The Company's position places primary reliance on disputing the efficacy of the Doctrine enunciated in *The Laidlaw Corp*, supra, and enforced in four Circuits.[3] The Company's argument is that in overruling the Board's prior rule precisely contrary to *Laidlaw*, which had been expressly endorsed in this Circuit,[4] the Board has misconstrued the Act and the Supreme Court cases on which it relies. It is important, therefore, to review the caselaw *Laidlaw* overturned, and the caselaw and statutory provisions on which it is premised, in order to determine which assessment of its validity is correct.

The circumstances with which the Laidlaw Doctrine is concerned occur when the union embarks on an economic strike,[5] the employer then replaces the strikers with new employees, and the strikers subsequently seek reinstatement. The questions posed are (1) whether the replacement of strikers terminates their status as employees, and if not, (2) when must they be rein-

stated and (3) when, if ever, does a striker not reinstated cease to be an employee?

The statutes which bear most directly on those questions are two. The first, § 2(3) of the Act, 29 U.S.C. § 152(3), provides in pertinent part:

"The term 'employee' shall include . . . any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment. . . ."

The second, § 8(a)(1) and (3), provides in pertinent part:

"(a) It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [section 7]

\* \* \* \* \* \*

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization. . . ."

The first question, whether economic strikers cease to be employees when replaced, was answered in part by the reading given to § 2(3) in N.L.R.B. v. Mackay Radio & Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381 (1938): "The plain meaning of the act is that if men strike in connection with a current labor dispute their action is not to be construed as a renunciation of the employment relation and they remain em-

the Company had already decided to discharge. The Examiner found this to be supportable as a "substantial and legitimate business reason" and the Board did not disturb that finding.

3. Laidlaw Corp. v. N.L.R.B., 414 F.2d 99 (7th Cir. 1969), cert. denied, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 100 (1970); American Machinery Corp. v. N.L.R.B., 424 F.2d 1321 (5th Cir. 1970); N.L.R.B. v. Johnson Sheet Metal, Inc., 442 F.2d 1056, 1061 (10th Cir. 1971); N.L.R.B. v. Hartmann Luggage Co., 453 F.2d 178 (6th Cir. 1971). The Tenth Circuit's opinion

was written by Judge Adams of the Third Circuit for a panel which included Mr. Justice Clark.

4. Brown & Root, Inc., 132 N.L.R.B. No. 38, 1961 C.C.H. NLRB 15,813 enf'd in part, 311 F.2d 447 (8th Cir. 1963); N.L.R.B. v. Plastilite Corp., 375 F.2d 343 (8th Cir. 1967).

5. The law is well settled that "unfair labor practice strikers" must be reinstated even if that necessitates firing their replacements. See, e. g., Plastilite Corp., 375 F.2d at 348.

ployees for the remedial purposes specified in the act." 304 U.S. at 347, 58 S. Ct. at 911. But the Court hastened to add that it is not an unfair labor practice either to hire replacements for strikers during an economic strike or to refuse to reinstate the strikers immediately after the strike by firing their replacements. The Court in *Mackay* nevertheless found a violation in the refusal of reinstatement, but only because it affirmed the Board's finding that in selecting which of the strikers to put into openings the Company had manifested its anti-union animus by deliberately discriminating against those most active in the Union.

Thus *Mackay* left unresolved the question whether, absent a showing of anti-union animus, the continuing employment status would entitle the economic strikers to the next opening. The Court had said it was not a violation "to reinstate only so many of the strikers as there were vacant places to be filled," 304 U.S. at 346, 58 S.Ct. at 911, but the Court had also said that the strikers "remain employees for the remedial purposes specified in the act" and apparently limited the employers' options, absent a valid reason for refusing reinstatement to a particular employee, to "determining which of its striking employees would have *to wait* because five men had taken permanent positions during the strike. . . ." 304 U.S. at 347, 58 S.Ct. at 911 (emphasis added).

The Board, however, did not read *Mackay* so liberally. In Brown & Root, Inc., 132 N.L.R.B. No. 38, 1968 C.C.H. NLRB 15,813 (1961), the replaced strikers had been reinstated but were seeking backpay retroactive to the date openings first occurred in their classifications even absent proof of anti-union animus. Thus the functional question of *Laidlaw* was squarely presented, but the Board answered negatively:

"[W]e reject the theory urged by the General Counsel, to the effect that the 13 strikers were entitled to appropriate vacancies as they arose. . . . In the circumstances of this case, we hold that Respondents had no obliga-

tion to seek out or prefer the 13 IAM strikers for vacancies which opened up after their application." 1968 C.C.H. NLRB, at 15,817–18. Further finding the refusal of reinstatement was not "motivated unlawfully," the Board denied backpay. This Circuit apparently agreed with that position. See N.L.R.B. v. Plastilite Corp., 375 F. 2d 343 (8th Cir. 1967).

In the Board's view, however, the foregoing caselaw was completely undermined in N.L.R.B. v. Great Dane Trailers, Inc., 388 U.S. 26, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967), and N.L.R.B. v. Fleetwood Trailer Co., 389 U.S. 375, 88 S.Ct. 543, 19 L.Ed.2d 614 (1967).

In *Great Dane* the Supreme Court held that independent proof of anti-union animus is not essential in all cases to finding that a refusal of reinstatement violates § 8(a)(1) and (3). The Court said that "some conduct carries with it 'unavoidable consequences which the employer not only foresaw but which he must have intended' and thus bears 'its own indicia of intent.'" 388 U.S. at 33, 87 S.Ct. at 1797 (citations omitted). The Court therefore held that when "the conduct in question falls within this 'inherently destructive' category" the animus is presumed and the employer must justify his refusal; and that even when "the resulting harm . . . is comparatively slight" an "affirmative showing of improper motivation" is required only if the employer has shown that "a substantial and legitimate business end is served" by the refusal. 388 U.S., at 33–34, 87 S.Ct. at 1797. Thus, that part of *Brown & Root* requiring proof of motivation lost its foundation.

Then in *Fleetwood,* the Supreme Court completed the demise of the *Brown & Root* Rule. In that case the employer had continued only partial production during the strike, employing nonstrikers and some replacements. When the economic strikers sought reinstatement at the conclusion of the strike, many of their jobs had not yet been reactivated and the employer contended that the strikers' status as employees

terminated upon the occurrence of their request for reemployment in jobs which at that instant did not exist, even if only temporarily. The Court of Appeals declined to enforce the Board's order requiring respondent to make the involved employees whole for loss of earnings. The court held that the right of the strikers to jobs must be judged as of the date they apply for reinstatement. The Supreme Court gave that contention short shrift and enforced the ordered reinstatement.

The gist of the present controversy is whether the Board was correct when it reasoned in *Laidlaw* that these cases mandated overruling the *Brown & Root* Rule.[6] The Company contends that while *Fleetwood* held a striker's rights to a particular job are not cut off by its unavailability *to anyone* when he asks for it, it does not follow from that that unavailability *because the job is occupied by a replacement* is irrelevant to such job rights. The Company buttresses this view with the following excerpt from *Fleetwood*:

"In some situations, 'legitimate and substantial business justifications' for refusing to reinstate striking employees who engaged in an economic strike have been recognized. One is when the jobs claimed by strikers are occupied by workers hired as permanent replacements during the strike in order to continue operations. N.L.R. B. v. Mackay Radio & Telegraph Co.; N.L.R.B. v. Plastilite Corp.; Brown & Root."

389 U.S., at 379, 88 S.Ct. at 546 (citations omitted). On the basis of the foregoing, the Company contends that *Fleetwood* is not only distinguishable from the instant case, but expressly reaffirmed the validity of the *Brown & Root* Rule.

The Board's rebuttal to that position, emphasizing that the Court said "when the jobs . . . *are occupied* by . . . replacements," is that the foregoing excerpt merely reaffirms the *Mackay* rule that replacements need not be discharged for the immediate reinstatement of strikers. The Board notes that the cases continue to recognize the continuing employment relationship and it would read *Fleetwood* with reference to the following excerpt:

"One [legitimate justification] is when jobs claimed by strikers *are occupied* by workers hired as permanent replacements during the strike. . . . [However,] [t]his basic right to jobs cannot depend upon job availability as of the moment when the applications are filed. . . . On the contrary, the status of the striker as an employee continues until he has obtained 'other regular and substantially equivalent employment.' . . . *If and when a job* for which the striker is qualified *becomes available,* he is entitled to an offer of reinstatement."

389 U.S. at 379, 381, 88 S.Ct. at 547. (Emphasis supplied).

We think that the rationale which in *Fleetwood* required filling reactivated jobs with strikers also requires the *Laidlaw* result of placing strikers into jobs vacated by replacements. The rea-

---

6. The Board's reasoning in *Laidlaw* as to the effect of these cases on the *Brown & Root* Rule was articulated as follows:
 (1) that the
 "earlier cases held that an economic striker's right to full reinstatement is determined at the time application for reinstatement is made, and that if a replacement occupies the position at that particular moment, the striker is henceforth entitled only to nondiscriminatory consideration as an applicant for new employment;"

 but that (2)
 "the Supreme Court in *Fleetwood* and *Great Dane* has now held that the right to the job does not depend on its availability at the precise moment of application, and that strikers retain their status as employees who are entitled to reinstatement absent substantial business justification and regardless of anti-union animus."

 1968–1 C.C.H. NLRB, at 29,827.

soning underlying both decisions was concisely stated in *Fleetwood* as follows:

> "Section 2(3) of the Act provides that an individual whose work has ceased as a consequence of a labor dispute continues to be an employee if he has not obtained regular and substantially equivalent employment. If, after conclusion of the strike, the employer refuses to reinstate striking employees, the effect is to discourage employees from exercising the rights to organize and to strike guaranteed by §§ 7 and 13 of the Act. Under §§ 8(a)(1) and (3) (29 U.S.C. § 158(1) and (3)) it is an unfair labor practice to interfere with the exercise of these rights. Accordingly, unless the employer who refuses to reinstate strikers can show that his action was due to 'legitimate and substantial business justifications,' he is guilty of an unfair labor practice. N.L.R.B. v. Great Dane Trailers \* \* \*. The burden of proving justification is on the employer."

379 U.S. at 378, 88 S.Ct. at 546 (citations omitted).

We conclude, therefore, that the Laidlaw Doctrine is properly grounded in statute and caselaw, and proceed to its applicability to this case.

## II. THE APPLICATION OF LAIDLAW

The remedial rule of the Laidlaw Doctrine, as stated in that case, was:

> "that economic strikers who unconditionally apply for reinstatement at a time when their positions are filled by permanent replacements: (1) remain employees; (2) are entitled to full reinstatement upon the departure of replacements [7] unless they have in the meantime acquired regular and substantially equivalent employment, or the employer can sustain his burden of proof that the failure to offer full reinstatement was for legitimate and substantial business reasons."

1968–1 C.C.H. NLRB, at 29,828.

 The Company contends that in applying that rule in the instant case, the order of reinstatement should be denied enforcement for various reasons as to several employees.[8] Having carefully reviewed the record and all the specific arguments [9] we find substantial evidence on the record as a whole to support the Board's conclusions as to the five employees the Trial Examiner recommended be reinstated, and therefore lim-

---

7. We specifically note disagreement with the Company's argument that a particular striker is entitled to reinstatement only upon the departure of the precise individual who replaced him. While the Laidlaw cases use language somewhat to that effect, it is clear that since the Doctrine rests on the concept of reactivating employees, the reinstatement is not to be so technically limited. Rather, "when a job for which the striker is qualified becomes available, he is entitled to an offer of reinstatement." *Fleetwood*, 389 U.S., at 381, 88 S.Ct. at 547.

8. The Company also broadly contends it had legitimate business reasons to refuse to rehire all seven because all seven sought other jobs and none was present at the "gates" when vacancies occurred. However, it is the taking of a substantially equivalent job, not looking for one, which severs the employment relation, and until severed, the strikers are employees whom the Company must seek out, not applicants who must seek out the Company. For

the latter reason, it is also irrelevant that some employees failed to keep their address current with the Company. Had the Company sought unsuccessfully to find them, this failure might have been a legitimate reason for refusing reinstatement. But there having been no such effort made here, this matter is relevant only if at the compliance stage of the proceeding these employees cannot be located.

9. The Company also relied on the fact that the union, during the strike, had demanded in the negotiations that strikers be given preference in hiring after the strike and then agreed to a contract which did not so provide, but which contained a "zipper clause." The Company contends the union thereby contracted away this right, and relies upon the analogous power to contract away the right to strike. See Boys Market Inc. v. Retail Clerks Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). We reject, however, the notion that failure to mention a right in a contract constitutes waiver of it, even if the

it this discussion to the two employees as to whom the Trial Examiner and Board were in disagreement.

 *Walter Ogden* was employed at the Company as a sheet metal worker. He had been on sick leave for surgery until two days preceding the strike, when he returned to light duty. After the strike and before any openings occurred at the Company for sheet metal workers, he became employed in that capacity by the Arkansas Sheet Metal Company at 5 cents more per hour than he had been earning. The Examiner found this to be regular and substantially equivalent employment although Ogden left after little over a week because he was physically unable to discharge his duties. The Board concluded this inability rendered the new employment not substantially equivalent to the old job because the Company had given him light work for two days. We think that conclusion is unsupported in the record as a whole. Both Ogden's new job and his regular job were as a sheet metal worker. If Ogden could not perform those duties for his new employer he was incapable of performing for the Company as well. That fact does not distinguish the jobs. If anything, it stands as a substantial and legitimate business reason for refusing reinstatement. We therefore decline to enforce the order insofar as it requires reinstatement of Ogden.

*Kenneth Thompson* was employed by the Company as a painter and took regular employment installing aluminum awnings. The Trial Examiner concluded this was substantially equivalent employment, but the Board disagreed because it did not involve the same activity; it paid less even though he had to regularly work overtime at the new job, and Thompson continued to seek reinstatement to his former job. We think the record as a whole provides sufficient support for this conclusion to warrant enforcement of the order to reinstate Thompson.

In summary, we enforce the order in all respects except the reinstatement of Ogden. Additionally, we observe that although the Company raises a good question in inquiring how long unreinstated strikers remain employees in lieu of openings, it is unnecessary here to express a view thereon because openings occurred for all these employees within a month of the strike. See American Machinery Corp. v. N.L.R.B., supra, 424 F. 2d, at 1328.

---

contract contains a "zipper clause." [A zipper clause generally states only that the contract represents all the agreements reached after collective bargaining on all issues and it absolves the parties of any duty to bargain further. See Loomis & Herman, Management's Reserved Rights and the NLRB—An Employer's View, 19 Labor Law Journal 695, 719–20 (1968). Compare Jacuzzi Bros. Inc., 49 L.A. 760, 765 (1967).] In any event, we have grave doubts that a union in collective bargaining can simply barter away the employment of some of its members. See generally Affeldt and Seney, Group Sanctions and Personal Rights, Professions, Occupations and Labor Law. 12 St.L.U. L.J. 179, 182–84, 199, 208–14 (1968). Cf. 29 U.S.C. § 158(b) (2).