NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

VITRONIC DIVISION OF PENN
CORPORATION, Respondent.

No. 79–1154.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1979.

Decided Nov. 2, 1979.

Application for Enforcement of Order of
the National Labor Relations Board

Resubmitted En Banc Dec. 17, 1979.

Denied Dec. 31, 1979.

Corinna Metcalf, Atty., N. L. R. B., Washington, D. C., argued, for petitioner. Susan Tepper Papadopoulos, Atty., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Act-

ing Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., on brief.

Glenn L. Moller, Moller, Talent, Kuelthau & Welch, St. Louis, Mo., for respondent.

Before STEPHENSON and McMILLIAN, Circuit Judges, and HANSON,* Senior District Judge.

McMILLIAN, Circuit Judge.

The National Labor Relations Board (the Board) petitions this court pursuant to § 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e), for enforcement of an order issued against the Vitronic Division of Penn Corporation (the Company).[1] For the reasons discussed below, we grant the Board's petition for enforcement of its order.

The facts are not in dispute. The Company manufactures vinyl plastic products in Doniphan, Missouri. From April 6 to August 11, 1976, the Company's employees, then represented by Local 825 of the United Rubber, Cork, Linoleum and Plastic Workers of America, AFL–CIO, engaged in an economic strike. During the strike, the Company hired permanent replacements for several striking employees.[2] On September 14, 1976, the Company mailed a notice to the replaced employees advising them that if they wished to be considered for recall when an opening occurred, they would have to sign a "Request For Reinstatement" form by 8:00 a. m. on September 20, 1976, at the Company offices. Each of the named employees, *supra* note 2, submitted a signed request form which was accepted by the Company. The form provided:

Request For Reinstatement

Date _____

Time _____

I hereby request to return to work for Vitronic Division of Penn Corp. when work becomes available that I am qualified to perform.

I understand this request must be renewed six months from this date.

Sign _____
[signature of employee]

Copy to employee

The Company placed the names of the replaced employees who signed reinstatement forms on a list to be accorded preferential recall rights when job openings occurred. The replaced employees did retain copies of the reinstatement request form; however, the Company sent no other notice of the renewal requirement.

On April 14, 1977, the Company mailed each of the named employees a letter advising them that "by not filling out a reinstatement slip, your personnel file has been removed from our active employees file and put in our 'former employees' files." Shortly after receiving this letter, employees Bennett and Hall sought permission from the Company to submit a new request for reinstatement; permission was refused. Bennett and Hall and the other named employees continue to desire reinstatement.

Since that time, the Company has hired several new employees for jobs formerly held by striking employees.[3] The plant manager testified that all of the striking employees who had renewed their reinstatement requests were rehired.

Employees Bennett and Hall then filed unfair labor practice charges with the Board on behalf of themselves and the oth-

---

* The Honorable William C. Hanson, United States Senior District Judge for the Southern District of Iowa, sitting by designation.

1. The decision and order of the Board are reported at 239 N.L.R.B. No. 8.

2. Permanent replacements were hired for Billy Ray Hall, Norma Bennett, Kathy Deckard, Nellie Dawes, Bernita Phelps, Sarah Crihfield, Ronnie Foulk, Willie Leonberger, and Velma

Brown. These persons are the discriminatees in the proceedings herein.

3. The Administrative Law Judge noted that employee Foulk submitted a regular employment application in September 1977, but had not been rehired as of the date of the administrative hearing in December 1977, even though Foulk was experienced in several positions and new employees had been hired since the date of his application.

er named employees. The Administrative Law Judge, as affirmed by the Board, found that the Company's renewal procedure was designed to eliminate the preferential recall rights of economic strikers and was thus inherently discriminatory and in violation of § 8(a)(3) and (1) of the Act. The recommended order provided for immediate reinstatement and back pay.

In opposition to the Board's petition for enforcement, the Company argues (1) the complaint is barred by the six-month limitation in § 10(b) of the Act, and (2) the renewal procedure utilized by the Company which required some affirmative action on the part of striking employees did not violate § 8(a)(3).

We find that the Board correctly determined that the complaint was not barred by the six-month statute of limitations contained in § 10(b) of the Act, 29 U.S.C. § 160(b).[4] The Company argues that the violation occurred in September 1976, when the striking employees were required to sign request for reinstatement forms, and not in April 1977 as charged in the complaint, when the employees were terminated after failing to renew their requests for reinstatement. We reject the Company's characterization of events, as did the Board.

■ We note preliminarily that the Company waived the § 10(b) defense by not raising the issue until exceptions were taken from the decision of the Administrative Law Judge. The six-month period in § 10(b) " 'is a statute of limitations, and is not jurisdictional. It is an affirmative defense, and if not timely raised, is waived * * *.' " *Shumate v. NLRB*, 452 F.2d 717, 721 (4th Cir. 1971), *citing Chicago Roll Forming Corp.*, 167 N.L.R.B. 961, 971 (1967), *enforced sub nom. NLRB v. Chicago Roll Forming Corp.*, 418 F.2d 346 (7th Cir. 1969).

■ Further, even assuming for the purpose of argument that the § 10(b) defense was timely raised, the facts of this case fall within the first situation described by the Supreme Court in *Local Lodge 1424, International Ass'n of Machinists v. NLRB (Bryan Manufacturing Co.)*, 362 U.S. 411, 416–17, 80 S.Ct. 822, 826–827, 4 L.Ed.2d 832 (1960) (footnotes omitted):

It is doubtless true that § 10(b) does not prevent all use of evidence relating to events transpiring more than six months before the filing and service of an unfair labor practice charge. However, in applying rules of evidence as to the admissibility of past events, due regard for the purposes of § 10(b) requires that two different kinds of situations be distinguished. The first is one where occurrences within the six-month limitations period in and of themselves may constitute, as a substantive matter, unfair labor practices. There, earlier events may be utilized to shed light on the true character of matters occurring within the limitation period; and for that purpose § 10(b) ordinarily does not bar such evidentiary use of anterior events. The second situation is that where conduct occurring within the limitations period can be charged to be an unfair labor practice only through reliance on an earlier unfair labor practice. There the use of the earlier unfair labor practice is not merely "evidentiary," since it does not simply lay bare a putative current unfair labor practice. Rather, it serves to cloak with illegality that which was otherwise lawful.

The basis of the unfair labor practice charge in the present case was the Company's termination of the named employees in violation of their rights as economic strikers to preferential reinstatement. Information about the request for reinstatement forms in September 1976 was illuminating but supplementary. The charge was filed August 17, 1977; the terminations in April 1977 were thus well within the statutory six-month period of limitations.

---

4. 29 U.S.C. § 160(b) provides in part: "*Provided, . . . no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge* with the Board and the service of a copy thereof upon the person against whom such charge is made . . . ."

On the substantive issue the Company argues that its procedure for limiting preferential recall rights by requiring affirmative action on the part of the employee was sanctioned by *American Machinery Corp. v. NLRB*, 424 F.2d 1321 (5th Cir. 1970), and *Brooks Research & Manufacturing, Inc.*, 202 N.L.R.B. 634, 82 L.R.R.M. 1599 (1973). In our opinion, the Company has read these cases too expansively. The language cited by the Company (*see* discussion below) was offered in dicta in those opinions. Moreover, acceptance of the Company's position would improperly curtail the reinstatement rights of economic strikers established in *NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 88 S.Ct. 543, 19 L.Ed.2d 64 (1967), and *Laidlaw Corp. v. NLRB*, 414 F.2d 99 (7th Cir. 1969), *enforcing* 171 N.L.R.B. No. 175, 68 L.R.R.M. 1252 (1968), *cert. denied*, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 100 (1970). *See also NLRB v. Great Dane Trailers, Inc.*, 388 U.S. 26, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967).

Both *American Machinery* and *Brooks Research* involved the issue of the duration of the reinstatement rights of economic strikers. In *American Machinery* the court, after rejecting the employer's defense of "difficulty of seeking out strikers 'several months' or 'five years' after their application for reinstatement, when a replacement leaves," 424 F.2d at 1327–28, used the following language:

> [W]hile the resolution is ultimately for the Board subject to limited judicial review under the Act, a concerned employer will find means to cope with this burden [difficulty in notifying employees of vacancies]. For example, he might notify the strikers when they request reinstatement of a reasonable time during which their applications will be considered current and at the expiration of which they must take affirmative action to maintain that current status.

*Id.* Similarly, in *Brooks Research*, the Board rejected the employer's contention that a time limit should be placed on the reinstatement rights of economic strikers. 202 N.L.R.B. at 636. The Board noted that under the agreement[5] on recall procedure negotiated by the parties, the entire preferential hiring list did not have to be maintained indefinitely and speculated that other means may be available by which the employer could cope with the alleged administrative burden, citing the "affirmative action" language from *American Machinery*. *Id.* The Board further noted that "in line with the Fifth Circuit's suggestion we see no reason why the [employer] cannot at reasonable intervals request the employees on the preferential hiring lists to notify it whether they desire to maintain their recall status." *Id.* at 637.

We think the cited passages were at most procedural suggestions, offered first by the Fifth Circuit, then by the Board, in response to employers' complaints about the burden[6] of maintaining preferential hiring list. The present case resulted from an expansive interpretation of these suggestions by counsel for the Company. Such an interpretation was not wholly unwarranted; however, neither *American Machinery* nor *Brooks Research* involved an *actual* request by an employer that employees take affirmative action to maintain their preferential

---

5. We note that reinstatement rights may be limited by a strike-settlement agreement. *See United Aircraft Corp.*, 192 N.L.R.B. 382, 77 L.R.R.M. 1785 (1971), *aff'd in part sub nom. Lodges 743 & 1746, International Ass'n of Machinists v. United Aircraft Corp.*, 534 F.2d 422 (2d Cir. 1975), *cert. denied*, 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976).

The agreement in *Brooks Research* required the employer to notify employees by telephone with confirmation by letter or telegram when a vacancy occurred. The employer was required only to use employees' last known addresses and telephone numbers on file. Employees were allowed three working days to report for work after notification; if the employee refused to accept reinstatement or failed to respond, his name was deleted from the preferential hiring list.

6. "We do not view the employer's duty to seek out replaced economic strikers to be a severe burden in practice. 'Employers, who presumably retain the addresses and phone numbers of the strikers, should not find it overly burdensome to give them notice that a position has fallen vacant.'" *Laidlaw Corp. v. NLRB, supra*, 414 F.2d at 105 n. 2, *citing* Note, 82 Harv. L.Rev. 1777, 1779 (1969).

recall status. The language cited by the Company in support of its recall procedure remains essentially speculative. Moreover, in both cases the employer's contention that a time limit should be placed on the duration of reinstatement rights was expressly rejected as contrary to the principles of *Fleetwood Trailer* and *Laidlaw. American Machinery Corp. v. NLRB, supra,* 424 F.2d at 1327–28; *Brooks Research & Manufacturing, Inc., supra,* 202 N.L.R.B. at 636. The Board's position against such a diminution of employee rights to preferential reinstatement thus qualifies the Board's endorsement in *Brooks Research* of the Fifth Circuit's "affirmative action" suggestion in *American Machinery.*

 When read in context, we think the Board in *Brooks Research* was approving only the use of the kind of recall procedure at issue in that case, *see* note 5 *supra,* but at reasonable intervals. In other words, we interpret *Brooks Research* to permit *at most* that an employer may periodically require employees, in response to appropriate notice, to indicate within a reasonable period whether they remain interested in reinstatement, and *not* the kind of procedure used by the Company in the present case. We are aware that such an interpretation places the burden of notifying the employees and verifying their continued interest upon the employer.[7] We are also aware that such an approach permits employees to await notification by the employer. However, this interpretation is consistent with *Laidlaw*: the Company must seek out the employees and offer them reinstatement. 414 F.2d at 105; *see Little Rock Airmotive, Inc. v. NLRB,* 455 F.2d 163, 168 n. 8 (8th Cir. 1972).

Accordingly, the petition for enforcement is granted.

STEPHENSON, Circuit Judge, dissenting:

I respectfully dissent. This is not a case where the employer placed a time limit on the duration of the reinstatement rights of economic strikers. The employer simply required that applicants renew their request for employment within six months. Failing to do so resulted in their removal from the recall list. It is my view that the Company's requirement was entirely reasonable and in keeping with the suggestions made by the court in *American Machinery, supra,* and by the Board in *Brooks Research, supra,* cited by the majority at 564.

We have been advised that the record discloses that the unit contained from two to three hundred people. At the time of the hearing, only nine strikers had not been recalled and were claiming that they were still interested in returning to work. Of the twenty to thirty strikers who were not recalled during the first six months after their application and who renewed their applications, all have been recalled. One of the two charging parties, Billy Ray Hall, is the husband of a striker who had not been recalled during the first six months after her application, had renewed her application in timely fashion and had been recalled. Yet Billy Ray Hall, who brought her to work daily, failed to renew his application.[1] It is difficult to believe that he inadvertently failed to renew it.

I would deny enforcement of the Board's order requiring immediate and full reinstatement and back pay to the nine employees who failed to renew their request for reinstatement six months from their original request, discharging if necessary any new employees hired since the expiration of the six-months limitation.

Cause having been previously resubmitted to the Court en banc on the briefs of the parties without oral argument, it is now hereby ordered that enforcement of the Board's order is denied by an evenly divided Court.

---

7. We note that the Company was able to promptly mail the termination letters in April 1977. Presumably the Company would encounter no greater administrative difficulty if it wished to contact employees periodically about their continued interest in reinstatement.

1. Respondent's brief p. 15.