**MEDALLION KITCHENS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**United Automobile, Aerospace and Agricultural Implement Workers of America, (UAW), Local 1267, Intervenor.**

No. 86–1185.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 15, 1986.

Decided Feb. 11, 1987.

Douglas P. Seaton, Minneapolis, Minn., for petitioner.

Paul J. Spielberg, Washington, D.C., for respondent.

Before ROSS and WOLLMAN, Circuit Judges, and DUMBAULD,* District Judge.

ROSS, Circuit Judge.

Medallion Kitchens, Inc. (Medallion) appeals from an order of the National Labor Relations Board (the Board) holding that Medallion had violated Sections 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), (3) (1982) by failing to reinstate former strikers into temporary positions made available prior to Medal-

* The HONORABLE EDWARD DUMBAULD, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

lion's relocation to Waconia, Minnesota. Medallion argues that the Board erred in finding that the temporary positions were vacancies to which former strikers were entitled to be offered reinstatement and that the Board abused its discretion to fashion remedies by extending the reinstatement and back pay award to the new Waconia facility. We affirm the Board's decision that Medallion violated the Act by failing to reinstate former strikers into the temporary positions, but reverse the Board's remedy to the extent that it extends the remedy of reinstatement and back pay to the Waconia facility.[1]

**Background:**

Medallion Kitchens, a manufacturer and distributor of kitchen cabinetry, maintained an office and place of business in Fergus Falls, Minnesota. The Company had a collective bargaining agreement with Local 1267 of the United Auto Workers which had an expiration date of September 19, 1983. On this day most of Medallion's 275 bargaining unit employees went on strike after failing to agree on a new contract. During the course of the strike, Medallion continued plant operations by using nonstrikers and by hiring replacement workers. On December 19, the Union notified the Company that the strike would end as of December 25, 1983, and that all of the strikers would be unconditionally available for work the following day. By midsummer 1984, Medallion had called back many ex-strikers, although approximately 75 former strikers had still not been offered reinstatement.

On July 2, 1984, the Union was advised that Medallion planned to relocate its oper-

ations in Waconia, Minnesota due to an earlier fire which had destroyed much of the Fergus Falls facility. Medallion maintains that in order to facilitate the move, it placed ads for temporary employment lasting 2 to 10 weeks in the Fergus Falls newspaper. As a result of the ad, Medallion hired 27 new employees on September 24, 1984, including three unreinstated strikers who had responded to the ad. The work performed by the newly hired employees was substantially the same as that performed by bargaining unit employees, including some work to prepare for the move to Waconia. Seven of the 24 new employees worked between two and three months; seven worked about a month; four worked about three weeks and the remaining six worked between one and ten days before their final layoff.

Anticipating the December 27, 1984 closing of the Fergus Falls facility, Medallion held in-house meetings inviting its present employees to apply for positions at the new Waconia facility. About forty of the existent employees accepted Waconia positions, three of whom had been among the new employees hired on September 24 as a result of the open hiring process.

Because of Medallion's failure to fill the September 24 positions with bargaining unit employees, the Union filed unfair labor practice charges. On July 24, 1985 the administrative law judge entered his findings of fact and decision concluding that Medallion violated sections 8(a)(1) and 8(a)(3) as charged. The ALJ issued an order requiring Medallion to award back pay to the 24 most senior unreinstated employees for the hours actually worked by the 24 newly hired employees between Sep-

---

1. On November 26, 1986, this court issued an opinion in *Medallion Kitchens, Inc. v. NLRB,* 806 F.2d 185 (8th Cir.1986) (*Medallion I*) where it was determined that Medallion Kitchens had violated Sections 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), (3) (1982) when it recalled laid-off strike replacements rather than reinstating former strikers. After determining that the status of the replacement strikers was temporary, this court concluded that Medallion Kitchens violated the Act when, following a December 10, 1983 fire which destroyed much of the Fergus Falls facility, Me-

dallion reassembled its workforce with strike replacements rather than reinstating former strikers. The decision in *Medallion I* has no bearing on the issues raised in the instant case. Here, the issue is whether Medallion Kitchen's employ of 24 persons hired in September of 1984 violated the Act when some 75 former strikers remained unreinstated. The two cases concern the legality of employing two discrete groups of workers in lieu of former strikers, and therefore turn on separate and distinct issues of law and fact.

tember 24 and December 31. In addition, the ALJ ordered that these 24 most senior employees be offered immediate and full reinstatement at the new Waconia, Minnesota facility, including back pay for any loss of earnings from the date of the Fergus Falls plant closing. Upon Medallion's excepting to the ALJ's decision, the Board affirmed the findings and conclusions of the ALJ and modified his order by providing that the remedy extend to the new Waconia facility unless Medallion can show that the discriminatees would not have applied for work at Waconia or, had they applied, that they would not have been hired. Medallion now appeals this decision.

## I.

■ Medallion argues first that substantial evidence does not support the Board's finding that Medallion violated the NLRA by failing to recall former strikers on September 24. It is well settled that during a strike, strikers retain their status as employees and are presumptively entitled to reinstatement at the conclusion of the strike. *NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 378, 88 S.Ct. 543, 545, 19 L.Ed.2d 614 (1967). It is also well settled that during an economic strike an employer may hire permanent replacements and need not discharge these replacements in order to create immediate vacancies for strikers later seeking reinstatement. *Id.* at 379, 88 S.Ct. at 546. Although an employer may lawfully refuse to reinstate an economic striker whose former position is occupied by a permanent replacement, "[i]f and when a job for which the striker is qualified becomes available, he is entitled to an offer of reinstatement." *Id.* at 381, 88 S.Ct. at 547. Absent a substantial and legitimate business justification, an employer's obligation is satisfied only upon an offer to the former striker of a substantially equivalent job. *Id.* at 381, 88 S.Ct. at 547; *Little Rock Airmotive, Inc. v. NLRB*, 455 F.2d 163, 167 (8th Cir.1972).

Medallion argues that the temporary, transitional positions made available to the September 24 new hires were not substantially equivalent to the unrecalled strikers' former jobs and, as such, Medallion had no obligation to offer these positions to the former strikers. Medallion relies on several cases which have considered brevity of employment a factor in determining whether a job opening was substantially equivalent to the former jobs of unrecalled bargaining unit employees.

In *Randall v. NLRB*, 687 F.2d 1240 (8th Cir.1982), this court observed that "[t]he existence of a temporary job is not the equivalent of a vacancy to which a striker should have been reinstated." *Id.* at 1248. Medallion urges the broadest interpretation of this holding, arguing that temporary positions never give rise to the reinstatement obligation. This decision, however, must be limited to the unique facts of the case. In *Randall*, rather than reinstating former strikers, the employer rehired two strike replacements, Cheryl and Louis Turnage who had voluntarily quit their jobs expecting to sell their home and leave the state. These jobs were still unfilled two weeks later when the Turnages asked to resume work until their house sale was finally consummated. Rehired, one worked four days, the other about two weeks. This court held that under these circumstances the reinstatement of the Turnages into their former positions for an extremely brief period of time did not amount to an unfair labor practice in violation of the Act.

Rather than enunciating the broad statement that limited duration is a dispositive factor in determining the equivalent nature of positions, the NLRB has indicated that brevity of employment is but one factor to be considered in making this determination. In addition to length of employment, the Board has considered other factors such as the duties, hours, pay and authority of the position. *New Era Electric Coop.*, 217 N.L.R.B. 477, 477 (1975). In *Certified Corp.*, 241 N.L.R.B. 369 (1979) the Board held that the temporary, part-time employment of someone other than a bargaining unit employee did not violate the reinstatement rights of the unrecalled strikers not only because the employment was tempo-

rary, but also because the position was "unequal in duties, hours and pay and thus not substantially equivalent to the jobs formerly performed by the strikers." *Id.* at 373.

In the case before us, the Board found that the jobs of the 24 employees hired in late September were substantially similar in duties, hours and pay to the regular production jobs.[2] The Board concluded that Medallion had an obligation to offer these positions to the ex-strikers and its failure to do so was a violation of the NLRA. We agree with the Board's conclusion that the temporary positions made available to the general public on September 24 were substantially equivalent to the jobs held by former strikers and that Medallion had no substantial or legitimate business justification for failing to offer these positions to the unreinstated strikers. Medallion's conduct deprived the strikers of the benefit of employment, albeit short-term employment, and as such violated the purpose of the Act by "discourag[ing] employees from exercising the rights to organize and to strike guaranteed by §§ 7 and 13 of the Act." *Little Rock Airmotive, Inc., supra,* 455 F.2d at 168 (quoting *NLRB v. Fleetwood Trailer Co., supra,* 389 U.S. at 378, 88 S.Ct. at 546.)

## II.

Finally, Medallion argues that even if the NLRB was correct in determining that Medallion had engaged in unfair labor practice by failing to reinstate ex-strikers into the temporary September 24 positions, the extension of reinstatement and back pay liability to the new Waconia facility was unrelated to the illegal act and therefore constituted an abuse of the Board's remedial power.

Section 10(c) of the National Labor Relations Act, 29 U.S.C. § 160(c) (1982), accords the Board broad latitude in fashioning remedies for unfair labor practices. The Board's authority is limited, however, by the requirement that the remedy provide a "restoration of the situation, as nearly as possible, to that which would have obtained but for the illegal discrimination." *Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271 (1941). This court has interpreted this "but for" requirement to mean that the make-whole remedy must reflect a cause and effect relationship between the unfair labor practice and the injury sought to be remedied. *NLRB v. Tama Meat Packing Corp.,* 634 F.2d 1071, 1074 (8th Cir.1980). If a finding is made that an NLRB order goes beyond the remedial purposes of the Act, this court possesses the authority to modify the order. *NLRB v. J.S. Alberici Construction Co.,* 591 F.2d 463, 470 n. 8 (8th Cir.1979).

The Board's order in the instant case directed Medallion to make whole the 24 most senior former strikers who were eligible to be reinstated at the Fergus Falls facility on September 24, 1984 for any loss of earnings from September 24 through December 27 when the Fergus Falls plant closed. As the attorney for the NLRB expressly indicated at oral argument, this back pay award will be limited to the hours actually worked by the 24 new hires, which ranged from three months to one day of employment. We believe this portion of the remedy is appropriately limited to making the discriminatees whole for losses they would not have suffered but for the discrimination Medallion was found to have committed.

The ALJ also recommended that Medallion offer the 24 most senior former strikers immediate and full reinstatement to substantially equivalent positions at the new Waconia facility and to make such strikers whole for any loss of earnings or benefits since the Fergus Falls plant clos-

---

**2.** Although the 24 new hires received substantially lower wages than did the regular production workers, the three former strikers who were hired on September 24 received their regular production pay and benefits. Presumably had all employees hired on September 24 been bargaining unit employees, Medallion would have uniformly paid each worker regular production wages.

ing on December 27, 1984. The Board's Decision and Order modified the ALJ's recommended remedy, finding merit in Medallion's argument that Medallion's Fergus Falls employees were not guaranteed transfer rights to Waconia, but instead were required to submit applications to be considered for employment. The Board, therefore, modified the ALJ's recommend reinstatement order, providing that the 24 most senior former strikers must be given reinstatement to positions at Waconia, unless Medallion can show that these employees would not have applied for work at Waconia or, had they applied, they would not have been hired.

In support of the extended remedy to Waconia, the Board argues that because Fergus Falls employees were encouraged to apply for jobs at the Waconia facility, Medallion's active employees had a significantly greater opportunity to gain employment at Waconia than did the unreinstated strikers. The Board argues, therefore, that the injury to the former strikers extended beyond the loss of pay at Fergus Falls but also included the lost opportunity for employment at Waconia.

■ We do not believe the necessary causal link exists between Medallion's violation of the Act by failing to reinstate former strikers and the extension of the reinstatement and back pay remedies to the Waconia facility. Both parties agree that the expired collective bargaining agreement did not provide Fergus Falls employees with transfer rights to a new facility. Instead, all Waconia positions could be secured only through an application process with Medallion. While active employees at the Fergus Falls facility were invited to apply for Waconia positions, these employees had no special claim of right to such positions. The Board conceded in its brief and at oral argument that although Medallion had informed its active employees of the availability of work at Waconia, the community as a whole, including the unreinstated former strikers, was aware of the impending move to Waconia and of the positions which would be available at the

new facility. Although there was no systematic method of encouraging non-Medallion employees to apply for Waconia positions, the unreinstated strikers had the opportunity to apply and be considered for these positions. The active Medallion employees had no decided advantage over the unreinstated strikers which would justify the extension of reinstatement and back pay to Waconia as ordered by the Board.

The evidence does not show that but for the failure to reinstate the strikers on September 24, these strikers would have had a significantly greater opportunity for employment at Waconia. We therefore find that the Board's order lacks a proper remedial purpose under the Act and reverse the order to the extent that it extends the remedy of reinstatement and back pay to the Waconia facility.