NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

WIZARD METHOD, INC., and Hydro
Logistics, Inc., Respondents.

No. 621, Docket 88–4111.

United States Court of Appeals,
Second Circuit.

Argued Dec. 18, 1989.

Decided March 6, 1990.

Amy J. Carroll, Casey, Sanchez, Jones, Amigone & Kelleher, Buffalo (Vincent J. Sanchez, of counsel), for respondents-appellants.

William A. Baudler, Atty., N.L.R.B., Washington, D.C. (Paul J. Spielberg, Deputy Asst. Gen. Counsel, Joseph E. Desio, Acting Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, N.L.R.B., of counsel), for petitioner-appellee.

Before OAKES, Chief Judge, PRATT, Circuit Judge, and SAND, District Judge.[1]

OAKES, Chief Judge:

The National Labor Relations Board ("the NLRB" or "the Board") petitions this court for enforcement of its December 16, 1987, order issued against Wizard Method, Inc. ("Wizard") and Wizard's alter ego, Hydro Logistics, Inc. ("Hydro"). Finding that substantial evidence supports the Board's findings of unfair labor practices committed by Wizard and Hydro, we grant the Board's petition for enforcement of its order.

## BACKGROUND

Since its incorporation in 1969, Wizard has been engaged in the business of providing industrial cleaning services to major companies. Owned and controlled by its president, Garlen Stoneman, Wizard in 1973 recognized the Wizard Method Employees Independent Union ("Independent Union") as the exclusive bargaining representative of its nonclerical, nonmanagerial employees. By the late 1970's, Wizard's business expanded from its original Niagara Falls, New York, area into Buffalo, New York. To reduce the travel expenses of Wizard employees living in Niagara Falls and performing work at Buffalo job sites, Stoneman in 1979 established and financed Hydro, a corporation based in Buffalo that also provided industrial cleaning services. Hydro began operations in December 1980, and its employees were represented by Local 1581, Painters District Council # 4, AFL–CIO ("Painters Union"). Although Hydro ostensibly was an entity distinct from Wizard, it leased equipment from Wizard without a contract, its employees and supervisors often worked for Wizard and vice versa, its management team was drawn from the ranks of Wizard's managers and officers, and its affairs were informally directed by Stoneman.

In early June 1981, three Hydro employees—James Jerard, Kenneth Leonard, and Dennis Leonard—filed a grievance stating that Hydro was not assigning work in accordance with the seniority arrangement guaranteed under the Painters Union contract. In a meeting held at the end of June with Hydro's management, the three employees were discharged. Claiming that they were unlawfully discharged for filing the grievance, Jerard and the Leonards filed an unfair labor practice charge against Hydro on July 2, 1981. The NLRB Regional Director dismissed their charge on August 13, 1981.

By mid–1981, Hydro's operations had virtually ceased. For the remainder of the year and the early part of 1982, therefore, Wizard resumed servicing industrial accounts in both the Niagara Falls and Buffalo areas. In March 1982, Stoneman met with Wizard's employees and union representatives to seek wage and benefit concessions. Claiming that Wizard's competitors were underbidding Wizard because of their

---

**1.** Of the United States District Court for the Southern District of New York, sitting by designation.

low wage rates, Stoneman told the employees that, unless Wizard obtained the concessions, it would discontinue its cleaning services and go into the business of leasing out cleaning equipment. The employees refused Stoneman's requests throughout the spring and early summer of 1982.

Having failed to obtain contract concessions, Wizard laid off a substantial number of employees in June 1982. Around the same time, Stoneman revived Hydro's operations. Several employees laid off by Wizard were rehired by Hydro under terms that included the concessions Stoneman had originally sought from Wizard employees. Wizard also entered into a leasing arrangement with Miracle Sales and Service ("Miracle"), whose president and founder had been employed by Wizard in various capacities in the 1970's. Pursuant to this arrangement, Miracle provided a workforce and leased Wizard's cleaning equipment to service Wizard's industrial accounts. Miracle rented an office in a building owned by Stoneman, used Wizard's office to distribute job application forms, and hired several laid-off Wizard employees.

On June 23 and July 30, 1982, the Independent Union filed unfair labor practice charges against Wizard, Miracle, and Hydro that challenged as unlawful the layoff of Wizard employees and Stoneman's efforts to obtain contract concessions. In July, Stoneman allegedly told a Wizard employee that he would sue every one of the employees who "went to the Labor Board." On August 24, 1982, James Jerard, one of the three employees who had been discharged from Hydro in June 1981, filed a new charge alleging the same misconduct which formed the basis of his previous, dismissed charge. Based on investigation of the allegations submitted by the Independent Union, the Regional Director issued a complaint against Wizard, Miracle, and Hydro for their actions in 1982 which allegedly aimed to circumvent Wizard's contractual obligations to the Independent Union; the Regional Director also reinstituted the charges relating to Hydro's 1981 discharge of Jerard and the Leonards, based on Wizard's and Hydro's conduct following the Regional Director's dismissal of the initial charge.

In August 1982, the Independent Union agreed to accept the contract concessions sought by Wizard and to withdraw its unfair labor practice charges. Around this same time, the apparent "joint venture" between Miracle and Wizard came to an end, and Wizard resumed servicing the industrial cleaning contracts it originally held as well as an additional account held by Miracle. Hydro also became inoperative. Wizard accordingly began rehiring its laid-off employees, with the exception of one, Randy Rotella, who allegedly was denied reinstatement for his activities on behalf of the Independent Union. The Board rejected the Independent Union's request, pursuant to the agreement with Wizard, that it drop charges against Wizard, Miracle, and Hydro.

## THE BOARD'S ORDER

The Board, acting pursuant to recommendations of an Administrative Law Judge ("ALJ"), found that Wizard and its alter ego, Hydro, committed four separate, yet related, unfair labor practices. First, it found that Hydro's discharge of Jerard and the Leonards on June 25, 1981, was in response to their filing of a grievance and thus violated sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act ("the Act"). *See* 29 U.S.C. §§ 158(a)(1), 158(a)(3) (1982). Second, the Board held that Wizard embarked, without prior bargaining, upon a complicated scheme of transferring unit work to Hydro and Miracle for the purpose of circumventing Wizard's contractual obligations to the Independent Union and gaining an unfair advantage over employees. This, it held, also violated sections 8(a)(1) and 8(a)(3), as well as section 8(a)(5) of the Act. *See* 29 U.S.C. § 158(a)(5) (1982). Third, the Board found that Stoneman, in violation of section 8(a)(1), threatened to sue members of Wizard's Independent Union for filing unfair labor practice charges against the company. Finally, the Board found that Wizard unlawfully refused to reemploy Rotella in October 1982 because of his activities on behalf of the Indepen-

dent Union, thus violating sections 8(a)(1) and 8(a)(3). The Board did not find any violations of the Act on the part of Miracle.

## DISCUSSION

### 1. *Hydro's Discharge of Three Employees in June 1981*

An employer violates sections 8(a)(3) and 8(a)(1) of the Act, of course, when it retaliates against an employee for engaging in union or protected activities. *See NLRB v. S.E. Nichols, Inc.*, 862 F.2d 952, 957 (2d Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3162, 104 L.Ed.2d 1025 (1989). If an employee's protected activity was a motivating factor in an employer's decision to take adverse action, the employer will be found to have violated the Act unless the employer demonstrates, as an affirmative defense, that it would have taken the same action even in the absence of the employee's protected activity. *See NLRB v. Transportation Mgmt. Corp.*, 462 U.S. 393, 402–03, 103 S.Ct. 2469, 2474–75, 76 L.Ed.2d 667 (1983). Where the employer's asserted reasons for the adverse action are shown to be pretextual, the employer has failed to meet its burden. *See NLRB v. S.E. Nichols*, 862 F.2d at 957.

Substantial evidence supports the Board's factual findings that James Jerard, Kenneth Leonard, and Dennis Leonard were discharged by Hydro in June 1981 for engaging in the protected activity of filing a grievance pursuant to their union contract. Nevertheless, Hydro contends that the charge resulting from these June 1981 dismissals was not reinstituted until August 1982, and therefore was time-barred under section 10(b) of the Act, *see* 29 U.S.C. § 160(b) (1982), which provides that unfair labor practice charges must be instituted within six months of the conduct constituting the alleged violation of the Act.

Although there might be merit to this contention, Hydro did not raise this section 10(b) defense to the reinstituted charge in either its answer to the Board's complaint or during the hearing before the ALJ. Because the section 10(b) limitation provision "is not jurisdictional in nature" but "is an affirmative defense and if not timely raised is waived," *Federal Mgmt. Co.*, 264 N.L.R.B. 107, 107 (1982) (citation omitted); *accord NLRB v. Vitronic Div. of Penn Corp.*, 630 F.2d 561, 563 (8th Cir.1979), Hydro's failure to raise the issue in the pleadings or at the hearing, under ordinary Board procedures, would constitute a waiver of the defense. *See Federal Mgmt Co.*, 264 N.L.R.B. at 107.

Hydro argues, however, that an exception should be granted in this case, since its failure to raise the section 10(b) defense before the ALJ was based on then-prevailing case law which allowed the Regional Director upon the discovery of new evidence to reinstate, outside the six-month limitations period, previously dismissed charges that had been timely commenced. *See California Pacific Signs*, 233 N.L.R.B. 450 (1977). Arguing that this case law was not repudiated until after the ALJ had rendered its decision, *see Ducane Heating Corp.*, 273 N.L.R.B. 1389, 1390–91 (1985) (overruling *California Pacific*), *enforced*, 785 F.2d 304 (4th Cir.1986), and that the ALJ had no authority to deviate from *California Pacific*, respondents contend that raising the section 10(b) defense in its exceptions to the ALJ's decision was the first possible point in the proceedings at which the defense was not futile.

We find that the Board did not abuse its discretion in holding that respondents had waived their section 10(b) defense. Even assuming that this case would have fallen within the exception that allowed reinstatement of charges outside the six-month period and that raising the defense before the ALJ would have been futile, the Board's strict adherence to its practice of requiring limitations defenses to be raised either in the answer to the Regional Director's complaint or prior to the hearing was not arbitrary or capricious. *See generally NLRB v. Martz Chevrolet, Inc.*, 505 F.2d 968, 970 (7th Cir.1974) (Board has discretion "to regulate its own procedures and interpret its own rules, so long as it does not act unfairly or in an arbitrary and discriminatory manner"). Accordingly, we hold that the Board acted within its discretion in proceeding with the charges relating to Hy-

dro's discharge of the three employees in June 1981.

2. *Wizard's Layoff of Employees and Transfer of Work to Hydro and Miracle*

 It is well established that an employer violates sections 8(a)(1) and 8(a)(3) of the Act when it effectuates a non-*bona fide* transfer of work to another company in order to avoid contractual obligations with its union. *See Southport Petroleum Co. v. NLRB*, 315 U.S. 100, 106, 62 S.Ct. 452, 455, 86 L.Ed. 718 (1942). The Board's finding that Wizard's transfer of work was not *bona fide* is a question of fact, *see id.*, and thus must be enforced if there is substantial evidence to support the finding. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951).

Here, numerous facts in the record suggest that Wizard transferred its industrial cleaning accounts to Hydro and Miracle to circumvent its contractual obligations to the Independent Union, and that Wizard never intended to go permanently into the business of only leasing cleaning equipment. Indeed, testimony heard by the ALJ indicates that Wizard was intimately involved in planning and arranging for its laid-off employees to be rehired by Hydro and Miracle under noncontractual terms. Moreover, Stoneman continued to exercise significant control over the accounts he transferred during the period in question, thus minimizing the risk of losing the work permanently. Indeed, as soon as he obtained the desired contract concessions from the Independent Union, he reassumed the accounts. These factors, combined with numerous others, clearly support the Board's finding that the layoffs and transfer of work were not *bona fide* responses to economic pressures, but rather were calculated moves intended temporarily to circumvent the Independent Union contract, and ultimately to gain an unfair bargaining advantage over employees.

 Moreover, we agree with the Board in concluding that Wizard violated its good-faith bargaining duty under section 8(a)(5) of the Act by not bargaining with the Independent Union before transferring work to Miracle and Hydro. Previous case law makes clear that an employer may not, without first bargaining to an impasse, relocate unit work during the term of an existing collective bargaining agreement, change contract terms, or lay off employees in response to union considerations. *See First Nat'l Maintenance Corp. v. NLRB*, 452 U.S. 666, 681–82, 687–88, 101 S.Ct. 2573, 2585–86, 69 L.Ed.2d 318 (1981); *Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 213–15, 85 S.Ct. 398, 404–05, 13 L.Ed.2d 233 (1964). Although Wizard bargained with its union as to the concessions it sought, it did not bargain over the option of transferring some contracts to Hydro and Miracle. Accordingly, the Board properly found a violation of section 8(a)(5).

3. *Stoneman's Threat to Sue Workers Appearing Before the Board*

 We furthermore affirm the Board's finding of a section 8(a)(1) violation arising out of Stoneman's threat that he would sue any employees who "went to the Labor Board." Although an employer may lawfully make predictions as to probable consequences (beyond his control) of employee actions, such predictions are unlawful where they carry threats of reprisal. *See NLRB v. Gissel Packing Co.*, 395 U.S. 575, 618–19, 89 S.Ct. 1918, 1942–43, 23 L.Ed.2d 547 (1969). Stoneman's statement promising to sue employees who went to the Board clearly falls into the category of unlawful threat rather than legitimate prediction.

4. *Refusal to Reinstate Rotella*

 We moreover find support for the Board's finding that Stoneman's refusal to rehire Rotella was motivated by anti-union animus and was therefore unlawful. Given Stoneman's many statements against Rotella's union activities and the fact that Rotella was the only employee wanting to return to work who was not rehired, the Board was justified in concluding that Rotella's protected activities were a motivat-

ing factor in Wizard's refusal to recall him from layoff.

Petition for enforcement granted.